704 A.2d 1010

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. PANTHER VALLEY PROPERTY OWNERS AS-
SOCIATION, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued September 22, 1997—Decided January 15, 1998.

320

Before Judges HAVEY, LANDAU and NEWMAN.

*Edward A. Berman,* argued the cause for appellant (*Hersh, Ramsey & Berman, P.C.,* attorneys; *J. David Ramsey,* of counsel; *Mr. Berman,* on the brief).

*John J. O'Reilly,* Warren County Prosecutor, and *Laura M. Lynch,* Assistant Prosecutor, argued the cause for respondent (*Ms. Lynch,* of counsel and on the brief).

The opinion of the court was delivered by

HAVEY, P.J.A.D.

Panther Valley is a gated residential community located in Allamuchy Township, Warren County. The community consists of over 2,000 single-family homes, townhouses and condominium units. The roads within the community are owned and maintained by defendant Panther Valley Property Owners Association (PVPOA), a New Jersey nonprofit corporation. In 1976, PVPOA filed a request, pursuant to *N.J.S.A.* 39:5A–1, that municipal or state law enforcement officials assume jurisdiction over the community's private roads in the enforcement of motor vehicle laws under Title 39. The request was approved by the Township and Commissioner of Transportation.

Plaintiff State of New Jersey, through the Warren County Prosecutor, filed a verified complaint and order to show cause in the Law Division to enjoin PVPOA from enforcing its own rules and regulations and imposing fines upon residents of the community for speeding and careless or reckless driving. The trial judge granted summary judgment to plaintiff, concluding that once PVPOA ceded authority to enforce the motor vehicle laws under Title 39 to the State, PVPOA had no power to impose fines for motor vehicle violations under the provisions of its bylaws.

PVPOA now appeals, claiming that: (1) the prosecutor had no standing to challenge its bylaws by the institution of this suit; and (2) PVPOA retained coextensive powers to promulgate and enforce its own traffic regulations on its private roads pursuant to *N.J.S.A.* 39:5A–3. We reject both contentions and affirm.

In 1968, Panther Valley's developer incorporated PVPOA and delegated to it the authority to maintain and administer the community's common property, including parks, playgrounds, open spaces and other facilities held for the benefit of the residents. Under the terms of the deed of conveyance and the association's bylaws, individuals purchasing property within the community automatically become members of PVPOA. PVPOA owns and maintains the private roads within the community.

In 1976, PVPOA submitted a written request to the Allamuchy Township Clerk that the Township assume jurisdiction over moving motor vehicle violations under Title 39 occurring on PVPOA's private roads. That request was made pursuant to *N.J.S.A.* 39:5A–1, which provides:

> Upon the filing of a written request by a person ... or by the board of trustees of any corporation or other institution of a public or semipublic character not for pecuniary profit, incorporated under Title 15 of the Revised Statutes, with the clerk of any municipality of this State within which the property of such person, corporation or institution is situate, that the provisions of subtitle 1, Title 39, of the Revised Statutes shall be made applicable to the semipublic or private roads, streets, ... open to or used by the public ... for purposes of vehicular travel by permission of such persons, corporations or institutions and not as matter of public right, the provisions of subtitle 1, Title 39 ... shall, in the discretion of the municipal authorities vested with the police powers in the locality within which the property ... is situate, and with the approval of the Commissioner of Transportation of this State, be made applicable thereto.

Allamuchy Township and the State Commissioner of Transportation approved the request and, on February 20, 1976, the Commissioner established speed limits governing Panther Valley's private roads.

PVPOA's rules and regulations state that:

> The laws and ordinances of the state and local municipalities will be enforced only by the State Police or by the appropriate State and/or Municipal authorities.

Also, a sign at the entrance of the community advises that "all traffic regulations enforced under New Jersey Title 39."

In April 1995, PVPOA amended its rules and regulations declaring that "Driving in excess of the posted speed limits and Reckless and/or Careless driving are prohibited." The rules establish a schedule of fines, which vary according to the number of the

offender's previous violations and the recorded speed in excess of the posted speed limit. The collection of a fine is enforceable by the imposition of a lien upon the residence of the PVPOA member, even if a tenant of that member commits the violation.

Grady W. Cook, PVPOA's general manager, enforces PVPOA's speeding regulations by utilizing a K–15 radar unit to monitor speed. When a vehicle is observed speeding, Cook sends a letter to the residence to which the vehicle is registered. The letter advises the member of the amount of the fine being assessed and his or her right to a hearing before the Covenants Committee.

Reckless and careless driving violations are instituted only by citizens' complaints.[1] These complaints include passing over a double yellow line, passing a stopped school bus and tailgating. Upon written complaint for reckless or careless driving, Cook sends the alleged violator a notice of hearing before the Covenants Committee, and the matter is handled in the same manner as speeding violations.

Since the 1995 amendments to the rules and regulations and their publication, 136 fines have been assessed against members. Of the 136 fines, 126 were assessed for speeding, and 10 for reckless and careless driving. In four instances, PVPOA members were fined for their tenants' alleged motor vehicle violations.

On March 22, 1995, PVPOA sent a letter to Elinor Mulligan, a Panther Valley resident, informing her of a speeding violation. In response, Mulligan advised John J. O'Reilly, the Warren County Prosecutor, of PVPOA's practice of levying fines against its members for moving motor vehicle violations. O'Reilly, on behalf of the State of New Jersey, filed a verified complaint and order to show cause against PVPOA seeking to enjoin the practice.

In granting the State summary judgment, the motion judge first concluded that the County prosecutor, on behalf of the State, had

---

[1] The bylaws simply make reference to "reckless and/or careless driving." No distinction is made between "reckless" and "careless" conduct for purposes of the imposition of a fine.

standing to institute the action. He reasoned that, as the County's chief law enforcement officer, the prosecutor has the power to supervise the enforcement of motor vehicle laws within the County. The judge was of the view that, since PVPOA's enforcement of its motor vehicle rules and regulations may adversely affect law enforcement activities as they relate to the Panther Valley community, there is a substantial public interest in resolving the question whether private associations have coextensive enforcement powers.

As to the merits, the judge first determined that PVPOA was "indirectly" governed by the Condominium Act, *N.J.S.A.* 46:8B–1 to –38, because the Panther Valley community contained some condominium units. That Act specifically prohibits a condominium association from imposing fines for moving motor vehicle violations when, pursuant to *N.J.S.A.* 39:5A–1, the condominium association has requested the State to assume jurisdiction over its private roadways. *See N.J.S.A.* 46:8B–15f. Alternatively, the judge concluded that once PVPOA elected to cede jurisdiction over the private roads to state and local law enforcement agencies, the association retained no coextensive power to enforce its own motor vehicle rules and regulations.

I

We agree with the motion judge that the County Prosecutor, as chief law enforcement officer of Warren County, *see N.J.S.A.* 2A:158–5, had the right to seek declaratory and injunctive relief concerning the breadth of PVPOA's power to fine its members for motor vehicle violations. *See State v. Winne,* 12 *N.J.* 152, 167, 96 *A.*2d 63 (1953); *Ruvoldt, Jr. v. Clark, Jr.,* 204 *N.J.Super.* 438, 442, 499 *A.*2d 247 (Law Div.1983). The prosecutor was seeking judicial clarification respecting the validity of private enforcement of speed limits established by the Department of Transportation, and careless or reckless driving proscribed by Title 39, when enforcement of motor vehicle laws had been ceded to the State under *N.J.S.A.* 39:5–1. The prosecutor was rightly

concerned that private enforcement of motor vehicle laws may hinder county-wide uniform enforcement of motor vehicle laws by the State Police, the agency charged with enforcing motor vehicle laws in Allamuchy Township.

We also agree that there is a substantial public interest in the outcome of this litigation: the prosecutor was concerned that coextensive enforcement of Title 39 violations by a private entity may be inimical to the public good and safety of the public. The situation is akin to that in *Falcone v. De Furia*, 103 *N.J.* 219, 222–23, 510 *A.*2d 1174 (1986), where a dispute arose regarding whether the police chief or Township Committee had authority to designate detectives to the Little Falls Township Police Department. The Passaic County Prosecutor filed suit seeking a declaratory judgment that an ordinance allowing for designation by the police chief was invalid. *Id.* at 223, 510 *A.*2d 1174. In determining that the County Prosecutor had standing to litigate this noncriminal case, the Supreme Court held that:

> When plaintiffs present a question of substantial public interest, any slight additional private interest will suffice to afford standing. Here, there is a substantial public interest in resolving the issue of who has authority to name police officers to a detective bureau. The proper allocation of responsibilities between a governing body and the chief of police is too important to be left in limbo. As the chief law enforcement officer in the county, the prosecutor has a legitimate interest in the relationship between a governing body and the chief of police on so significant a question. Consequently, the Passaic County Prosecutor has standing, even in the absence of the Little Falls Chief of Police as a party, to bring the present action.
>
> [*Id.* at 226–27, 510 *A.*2d 1174 (citations omitted).]

Likewise, here, the ability of a nonprofit association to assess fines for violations of motor vehicle laws presents a novel question of substantial public interest and involves the county-wide law enforcement authority of the prosecutor. The motion judge properly concluded that the County Prosecutor had standing to bring this suit.

## II

■ PVPOA contends that the motion judge erred in concluding that the Condominium Act applies to the Panther Valley community and association. The Condominium Act provides that:

If authorized by the master deed or bylaws, the association may impose reasonable fines upon unit owners for failure to comply with provisions of the master deed, bylaws or rules and regulations, subject to the following provisions:

. . . .

On roads or streets with respect to which Title 39 of the Revised Statutes is in effect under section 1 of P.L.1945, c. 284 [*N.J.S.A.* 39:5A–1], *an association may not impose fines for moving automobile violations.*

[*N.J.S.A.* 46:8B–15f (emphasis added).]

As noted, the motion judge reasoned that since some of the units in the community were under condominium ownership, *N.J.S.A.* 46:8B–15f was applicable because the condominium owners had to use the private roads in the Panther Valley community to travel to and from their units.

The Condominium Act establishes a comprehensive scheme for regulating condominiums and their associations. Under the Act, "condominium" is defined as a "form of ownership of real property under a master deed providing for ownership by one or more owners of units of improvements together with an undivided interest in common elements appurtenant to each such unit." *N.J.S.A.* 46:8B–3h. A "condominium" is created upon the recording of a master deed executed and acknowledged by the owners. *N.J.S.A.* 46:8B–8. Only when the master deed sets forth matters required under *N.J.S.A.* 46:8B–9 will the comprehensive legislation apply to the property. *N.J.S.A.* 46:8B–8.

The problem with the motion judge's conclusion that *N.J.S.A.* 46:8B–15f applies here is that Panther Valley is not a condominium development. The community is a mix of single-family residences, townhouses and condominiums. A small minority of the units are governed by the Condominium Act. The development scheme of the community, established by its covenants and restrictions, includes substantial common properties deeded to a nonprofit association (PVPOA) for the mutual use and enjoyment of the residents. This type of "common interest development" which is governed by a homeowners association to which all property owners are members, unlike a condominium development, has no statutory guidelines for its establishment. Wendell A. Smith, *New*

*Jersey Condominium & Community Association Law* 2 (Gann ed.1993).

Merely because there are some condominium units within the Panther Valley community governed by the Condominium Act does not change the fact that PVPOA, owner of the streets and roadways in question, is not a condominium association. Thus, *N.J.S.A.* 46:8B–15f is inapplicable.

## III

PVPOA acknowledges that it had requested the local municipality and Commissioner of Transportation to assume jurisdiction over motor vehicle violations on PVPOA's private roads. However, it argues that this "election" provided for under *N.J.S.A.* 39:5A–1 was "never intended by the legislature to be mutually exclusive." PVPOA asserts that, as a private property owner, it retains power, coextensive with public law enforcement agencies, to impose its own fines for violation of motor vehicle laws on its private roads. In support of that proposition, PVPOA cites *N.J.S.A.* 39:5A–3, which reads in part:

> The filing of a written request [pursuant to *N.J.S.A.* 39:5A–1] ... shall not be deemed to constitute a dedication to public use, of any such roads ... open to or used by vehicular traffic, nor shall it be construed to prevent such persons, corporations or institutions, as owners of such property ... from prohibiting such use or from requiring other or different or additional conditions than those specified in subtitle 1, Title 39, of the Revised Statutes, or otherwise regulating such use as may seem best to such persons, corporations or institutions.

PVPOA argues that, under this provision, its filing of a written request pursuant to *N.J.S.A.* 39:5A–1 did not prevent it from "regulating such [vehicular] use as may seem best" to PVPOA. In this case, PVPOA reasons, it deemed it "best" to preserve the power to fine its members for moving motor vehicle violations occurring on its private roads.

In order to resolve the question whether PVPOA retains coextensive authority to enforce the provisions of Title 39 on its private roads, we first consider the plain meaning of *N.J.S.A.* 39:5A–3. *National Waste Recycling, Inc. v. Middlesex County*

*Improvement Auth.,* 150 *N.J.* 209, 223, 695 *A.*2d 1381 (1997). Language of the statute should be " 'given its ordinary meaning and construed in a common sense manner to accomplish the legislative purpose.' " *N.E.R.I. Corp. v. New Jersey Highway Auth.,* 147 *N.J.* 223, 236, 686 *A.*2d 328 (1996) (quoting *State v. Pescatore,* 213 *N.J.Super.* 22, 28, 516 *A.*2d 261 (App.Div.1986), *aff'd,* 105 *N.J.* 441, 522 *A.*2d 440 (1987)). Particular words and phrases found in the statute "must be construed within their context and unless inconsistent with the Legislature's manifest intent or unless another meaning is expressly indicated, they must be given their generally accepted meaning." *Stevenson v. Keene Corp.,* 254 *N.J.Super.* 310, 317, 603 *A.*2d 521 (App.Div.1992), *aff'd,* 131 *N.J.* 393, 620 *A.*2d 1047 (1993).

The language of *N.J.S.A.* 39:5A–3 is plain. When a property owner files a request that a public law enforcement agency assume jurisdiction to enforce motor vehicle laws on the property owner's private roads, the owner is not prevented from: (1) "prohibiting" use of the private roads; (2) requiring "other" or "different" or "additional" conditions than those specified in subtitle 1 (motor vehicle and traffic laws) of Title 39; or (3) "otherwise regulating such use" of the private roads as "may seem best" to such property owner. PVPOA focuses solely on the "catch-all" language, preserving its power to "regulate[ ]" such use of the private roads as "may seem best" to it.

The problem with PVPOA's argument is that it ignores the word "otherwise," which modifies "regulating such use." *See Sun Co. v. Zoning Bd. of Adjust. of Avalon,* 286 *N.J.Super.* 440, 444, 669 *A.*2d 833 (App.Div.) ("the use of the adjective 'principal' as a modifier for the noun 'use' in the ordinance aids in ascertaining the meaning of the use restrictions"), *certif. denied,* 144 *N.J.* 376, 676 *A.*2d 1091 (1996). The word "otherwise" is defined as "in a *different* way or manner" or "in *different* circumstances." *Webster's Ninth New Collegiate Dictionary* 835 (9th ed.1986) (emphasis added).

Moreover, the word "otherwise" appears in the same context as the words "other," "different" and "additional" condi-

tions. The meaning of words may be indicated or controlled by those with which they are associated. *State v. Mortimer*, 135 *N.J.* 517, 536, 641 *A.*2d 257, *cert. denied*, 513 *U.S.* 970, 115 *S.Ct.* 440, 130 *L.Ed.*2d 351 (1994); *Germann v. Matriss*, 55 *N.J.* 193, 220, 260 *A.*2d 825 (1970). Given that "otherwise regulating" is associated with words connoting acts or conditions that are "different" from or "additional" to those covered under subtitle 1, Title 39, its inclusion indicates that it carries the same meaning. *State v. Afanador*, 134 *N.J.* 162, 172, 631 *A.*2d 946 (1993). So read, "otherwise regulating such use" necessarily means that the property owner retains authority only to impose conditions as to matters not set forth in subtitle 1 of Title 39.

For example, PVPOA may restrict the hours of use of the private roads or install "speed" bumps subject to municipal regulation. However, PVPOA is not "otherwise" regulating use of its private roads when it fines its residents for exceeding the very speed limits established by the Department of Transportation, pursuant to *N.J.S.A.* 39:4–98 (rates of speed) and for careless or reckless driving, conduct expressly governed by *N.J.S.A.* 39:4–97 and –96.

This construction of the phrase "otherwise regulating such use" is consistent with the legislative intent, gleaned from the entire statutory framework governing enforcement of moving motor vehicle laws. Furtherance of legislative purpose is the key to the interpretation of any statute. *GE Solid State, Inc. v. Director, Div. of Tax.*, 132 *N.J.* 298, 308, 625 *A.*2d 468 (1993). We must therefore read a statute sensibly to effectuate the legislative purpose and to avoid unreasonable results. *Adams v. Cooper Hosp.*, 295 *N.J.Super.* 5, 12–13, 684 *A.*2d 506 (App.Div.1996), *certif. denied*, 148 *N.J.* 463, 690 *A.*2d 610 (1997). To that end, "we consider not only the particular statute in question, but also the entire legislative scheme of which it is a part." *Kimmelman v. Henkels & McCoy, Inc.*, 108 *N.J.* 123, 129, 527 *A.*2d 1368 (1987).

The Legislature's clear purpose in enacting subtitle 1 of Title 39 was uniformity in traffic regulation. The subtitle gives the Com-

missioner of Transportation wide supervisory control over ordinances and resolutions governing traffic and traffic conditions on public streets or roadways. *See N.J.S.A.* 39:4–8; *N.J.S.A.* 39:4–197; *N.J.S.A.* 39:4–201; *N.J.S.A.* 39:4–202. *N.J.S.A.* 39:4–197 provides that "no municipality shall pass an ordinance or resolution on a matter covered by or which alters or in any way nullifies the provisions of [chapter 4, subtitle 1 entitled 'Traffic Regulation']" unless it falls within one of the specified exceptions in that section. An ordinance passed pursuant to *N.J.S.A.* 39:4–197 is effective only upon approval by the Commissioner, except as otherwise provided in *N.J.S.A.* 39:4–8b. *N.J.S.A.* 39:4–202; *see also N.J.S.A.* 39:2–1 (Division of Motor Vehicles "shall have full charge" of the regulation of motor vehicles, including their use and speed, and the proceedings for violations and imposition of penalties). The obvious intendment of giving broad oversight to the Commissioner was "to advance the interests of safety and uniformity in traffic regulation" throughout the State. *Visidor Corp. v. Cliffside Park*, 48 *N.J.* 214, 223, 225 *A.*2d 105 (1966), *cert. denied*, 386 *U.S.* 972, 87 *S.Ct.* 1166, 18 *L.Ed.*2d 132 (1967); *see also Eveler v. Atlantic City*, 91 *N.J.L.* 135, 137, 102 *A.* 898 (Sup.Ct.1918).

In our view, *N.J.S.A.* 39:5A–3 must be read in the context of this overall legislative scheme of demanding uniformity in traffic regulation in the interests of public safety. PVPOA's construction of the statute clearly frustrates that aim. Dual enforcement of the traffic laws by the police and private associations may undermine the Legislature's quest for uniformity. Independent "speed traps" and use of uncertified radar devices by untrained members of a homeowners association, as here, has the clear capacity to obstruct lawful enforcement by patrolling law enforcement officers who apply approved methodology in a manner consistent with scientifically-accepted procedures.[2]

---

[2] For example, PVPOA's preparation and use of its K–15 radar does not comply with controlling case law. *See State v. Wojtkowiak*, 174 *N.J.Super.* 460, 462–63, 416 *A.*2d 975 (App.Div.1980).

Moreover, assumption of jurisdiction over enforcement of motor vehicle laws by state or local law enforcement agencies necessarily triggers involvement of the local municipal court and the jurisdictional reach of the Director of the Division of Motor Vehicles. In other words, the private roads become part of the overall network of public roadways and streets subject to the enforcement provisions of Title 39. *See N.J.S.A.* 39:5–1 to –52. The record discloses that PVPOA has a standing policy to divert citizens' complaints concerning such serious motor vehicle violations as reckless driving from the municipal court to its Covenants Committee for internal resolution and the imposition of the appropriate fine established by PVPOA. Such diversion deprives the municipal court of the power to impose the requisite penalty in accordance with law commensurate with the seriousness of the offense and the driving record of the offender. It also nullifies the Director of the Division of Motor Vehicles' power to suspend the license of the offender, *N.J.S.A.* 39:5–30, or to assess appropriate penalty points, *N.J.S.A.* 39:5–30.6. *See No Illegal Points, Citizens for Drivers Rights, Inc. v. Florio,* 264 *N.J.Super.* 318, 324, 624 *A.*2d 981 (App.Div.), *certif. denied,* 134 *N.J.* 479, 634 *A.*2d 526 (1993). Such a result is inconsistent with the legislative goal of uniformity and of protecting the public from the persistent or egregious offender.

Finally, we earlier concluded that *N.J.S.A.* 46:8B–15f, which prohibits a condominium association from assessing fines for moving motor vehicle violations, is inapplicable here because PVPOA is not a condominium association. However, that proscription in the Condominium Act is instructive since it deals with the same subject matter as *N.J.S.A.* 39:5A–3; to what extent a homeowners association retains coextensive power to enforce its own motor vehicle rules and regulations on its private roads once it cedes enforcement jurisdiction to a public law enforcement agency. *See In re J.W.D.,* 149 *N.J.* 108, 115, 693 *A.*2d 92 (1997) (quoting *State v. Green,* 62 *N.J.* 547, 554–55, 303 *A.*2d 312 (1973)) (" 'every effort should be made to harmonize the law relating to the same subject matter' "). In our view, *N.J.S.A.* 46:8B–15f is a tacit expression by the Legislature that any private homeowners associations,

condominiums or otherwise, have no business assessing fines for motor vehicle violations once they cede enforcement jurisdiction to a public agency pursuant to *N.J.S.A.* 39:5A–1. It is a recognition by the Legislature that, in such circumstances, the powers of the public law enforcement agency are preemptive and exclusive.

Affirmed.