**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2095-18T4

IN RE LEONIA BOROUGH
ORDINANCE NUMBERS
2018-15, 2018-14, AND
2018-17.

_____

Argued December 2, 2019 – Decided March 6, 2020

Before Judges Moynihan and Mitterhoff.

On appeal from the New Jersey Department of Transportation.

Brian M. Chewcaskie argued the cause for appellant Borough of Leonia (Cleary Giacobbe Alfieri Jacobs LLC, attorneys; Brian M. Chewcaskie, of counsel and on the briefs; Mary Anne Groh, on the briefs).

Philip Joseph Espinosa, Deputy Attorney General, argued the cause for respondent New Jersey Department of Transportation (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Philip Joseph Espinosa and Ryne Anthony Spengler, Deputy Attorney General, on the brief).

PER CURIAM

The Borough of Leonia (the Borough) appeals from a final agency decision issued by the Commissioner of the New Jersey Department of Transportation (NJDOT). The Commissioner's final decision recognized that the Borough, which is located in close proximity to the George Washington Bridge (the Bridge), was "concerned about a high volume of traffic during commuter rush hours using [the Borough's] streets as an alternative means from either Route 80 or Route 46 to commute across" the Bridge, which made the Borough "residents' own commutes and regular travel slower and raise[d] the attendant public safety concerns as well as concerns about the speed of [the Borough's] police, fire and ambulance response time[.]" In response, the Borough adopted three ordinances, described by the Commissioner in her final decision:

> Leonia Ordinance No. 2018-14, if approved and implemented, would restrict the use of approximately [thirty-two] streets listed therein during nine specified hours of the day, to Leonia residents, those with a demonstrable need to access the streets listed, or those who are traveling to or from a Leonia destination.
>
> Leonia Ordinance No. 2018-15, if approved and implemented, would restrict the use of approximately [twenty-three] streets listed therein during nine specified hours of the day, to Leonia residents, those with a demonstrable need to access the streets listed, or those who are traveling to or from a Leonia destination.

2          A-2095-18T4

Leonia Ordinance No. 2018-17 amends Ordinances Nos. 2018-14 and 2018-15 by moving a traffic regulation regarding Fort Lee Road-eastbound/Station Parkway (Southbound from Fort Lee Road/No Right Turn) from 2018-14 to 2018-15.

The Commissioner aptly summarized the effect of the ordinances: "designat[ing] the listed streets as no through streets for other than those motorists listed in the ordinances, during the nine hours indicated on each day." The Commissioner determined proposed Leonia Borough ordinances, Nos. 2018-14, 2018-15, and 2018-17, were legally invalid "on their face" because the Borough did not have inherent authority to adopt ordinances that created "no through" streets, and, basing her analysis on a 1955 Attorney General opinion,[1] the Commissioner concluded the ordinances could not be approved.

On appeal, the Borough argues:

[POINT ONE]

THE DOT COMMISSIONER'S FINAL DECISION THAT THE DOT LACKED AUTHORITY TO CONSIDER THE BOROUGH ORDINANCES RESTRICTING VEHICULAR TRAFFIC ON CERTAIN STREETS DURING CERTAIN HOURS TO PERSONS TRAVELING THROUGH—BUT NOT TO OR FROM—THE BOROUGH OFFENDS THE STATE CONSTITUTION AND VIOLATES THE EXPRESS LEGISLATIVE POLICY IN N.J.S.A. 39:4-8 CONFERRING AUTHORITY ON THE

---

[1] Attorney General Formal Opinion 1955 – No. 5 (Mar. 4, 1955).

COMMISSIONER TO REVIEW ORDINANCES REGULATING TRAFFIC.

[POINT TWO]

THE ATTORNEY GENERAL'S OPINION ISSUED TO THE DIVISION OF MOTOR VEHICLES ELEVEN YEARS BEFORE THE DOT WAS ESTABLISHED FOR AN INTERPRETATION OF A DIFFERENT STATUTE IS NEITHER BINDING NOR PERSUASIVE FOR INTERPRETATION OF A STATUTORY PROVISION REVISED EIGHT[] TIMES SINCE THE 1955 ATTORNEY GENERAL'S OPINION.

[POINT THREE]

N.J.S.A. 39:4-8 PROVIDES THAT TRAFFIC REGULATIONS ADOPTED BY MUNICIPALITIES AND COUNTIES ARE EFFECTIVE UPON ADOPTION WITHOUT APPROVAL BY THE COMMISSIONER AS AUTHORIZED IN SUBSECTIONS B., C., D., AND E. AND, OTHERWISE, NOT UNLESS APPROVED BY THE COMMISSIONER PURSUANT TO SUBSECTION A.

[POINT FOUR]

THE DOT COMMISSIONER MUST CONSIDER THE ORDINANCES ALONG WITH THE REPORTS AND DATA SUBMITTED BY THE BOROUGH AND MAKE A DECISION AS TO WHETHER THE ORDINANCES ARE IN THE INTEREST OF SAFETY AND THE EXPEDITION OF TRAFFIC ON THE PUBLIC HIGHWAYS.

A-2095-18T4

The Commissioner did not review the ordinances pursuant to the statutory scheme created by the Legislature. We, therefore, reverse and remand.

Our review of an administrative agency's final determination is ordinarily deferential. In re Carter, 191 N.J. 474, 482 (2007). A final agency decision will be set aside only if the decision "is arbitrary, capricious or unreasonable, or is not supported by substantial credible evidence in the record as a whole." J.D. ex rel. D.D.H. v. N.J. Div. of Developmental Disabilities, 329 N.J. Super. 516, 521 (App. Div. 2000). Thus, on review, this court is limited to determining whether: (1) the agency violated express or implied legislative policies; (2) the record contains substantial evidence to support the agency's findings; and (3) if the agency reached a conclusion that could not have been reasonably made on a showing of the relevant factors when applying the legislative policies to the facts. Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995).

Although we generally accord substantial deference to an agency's interpretation of a statute which it is charged with enforcing, N.J. Tpk. Auth. AFSCME, Council 73, 150 N.J. 331, 351 (1997), our review of an agency's legal determinations, including statutory interpretation, however, is de novo, U.S. Bank, N.A. v. Hough, 210 N.J. 187, 200 (2012). "Statutory interpretation involves the examination of legal issues and is, therefore, a question of law

subject to de novo review." Saccone v. Bd. of Trs., PFRS, 219 N.J. 369, 380 (2014); see also Township of Holmdel v. N.J. Highway Auth., 190 N.J. 74, 86 (2007).

As we begin our review of the applicable statutes, we are mindful that our primary purpose when construing statutes is to "discern the meaning and intent of the Legislature." State v. Gandhi, 201 N.J. 161, 176 (2010). "[W]e look first to the plain language of the statute" to accomplish our goal of determining and effectuating the Legislature's intent, Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 553 (2009) (quoting Pizzullo v. N.J. Mfrs. Ins. Co., 196 N.J. 251, 264 (2008)), and seek "further guidance only to the extent that the Legislature's intent cannot be derived from the words that it has chosen," Pizzullo, 196 N.J. at 264. But, if "the plain language leads to a clear and unambiguous result . . . [the] interpretive process is over," Richardson v. Bd. of Trs., PRFS, 192 N.J. 189, 195 (2007), and "the court's sole function is to enforce the statute in accordance with those [clear] terms," McCann v. Clerk of Jersey City, 167 N.J. 311, 320 (2001) (quoting SASCO 1997 NI, LLC v. Zudkewich, 166 N.J. 579, 586 (2001)).

Statutory words are ascribed their "ordinary meaning and significance" and are read "in context with related provisions so as to give sense to the

legislation as a whole[.]" <u>DiProspero v. Penn</u>, 183 N.J. 477, 492 (2005). To the extent possible, legislative language should not "be found to be inoperative, superfluous or meaningless." <u>Franklin Tower One, L.L.C. v. N.M.</u>, 157 N.J. 602, 613 (1999) (quoting <u>In re Sussex Cty. Mun. Utils. Auth.</u>, 198 N.J. Super. 214, 217 (App. Div. 1985)).

Inasmuch as we are considering multiple portions of Title 39, as well as other transportation-related statutes, we heed the Court's prescription that

> "[s]tatutes must be read in their entirety; each part or section should be construed in connection with every other part or section to provide a harmonious whole." <u>Burnett</u> [v. County of Bergen, 198 N.J. 408, 421 (2009)]. "When reviewing two separate enactments, the Court has an affirmative duty to reconcile them, so as to give effect to both expressions of the lawmakers' will." <u>Saint Peter's Univ. Hosp. v. Lacy</u>, 185 N.J. 1, 14 (2005). "Statutes that deal with the same matter or subject should be read <u>in pari materia</u> and construed together as a unitary and harmonious whole." <u>Id.</u> at 14-15.
>
> [<u>In re Petition for Referendum on Trenton Ordinance 09-02</u>, 201 N.J. 349, 359 (2010).]

We first note the Legislature's purpose and intent in enacting the Transportation Act of 1966 was

> to establish the means whereby the full resources of the State can be used and applied in a coordinated and integrated matter to solve or assist in the solution of the problems of all modes of transportation; to promote an

7

A-2095-18T4

efficient, fully integrated and balanced transportation system for the State; to prepare and implement comprehensive plans and programs for all modes of transportation development in the State; and to coordinate the transportation activities of State agencies, State-created public authorities, and other public agencies with transportation responsibilities within the State.

[N.J.S.A. 27:1A-1.]

To that end, the Legislature vested in the Commissioner broad functions, powers and duties, including those previously vested in the State Highway Commissioner, N.J.S.A. 27:1A-5, and enumerated powers and duties previously exercised by the Director of the Division of Motor Vehicles, inclusive of chapter 4 of Title 39, N.J.S.A. 27:1A-44.

N.J.S.A. 39:4-6 imposes a duty on the Commissioner to "investigate traffic conditions, means for their improvement and the enforcement of laws and regulations relating to traffic[.]" "[The Commissioner] shall also enforce the provisions of this chapter and promulgate rules and regulations for the enforcement of [her] duties hereunder." N.J.S.A. 39:4-6.

The Legislature also limited the power of municipalities to "pass an ordinance or resolution on a matter covered by or which alters or in any way nullifies the provisions of this chapter [4 of Title 39] or any supplement to this chapter[,] except" for the enumerated measures "that a municipality may pass,

without the approval of the commissioner[.]" N.J.S.A. 39:4-197. As we recognized in State v. Panther Valley Property Owners Ass'n, 307 N.J. Super. 319, 331 (App. Div. 1998), "[t]he obvious intendment of giving broad oversight to the Commissioner was 'to advance the interests of safety and uniformity in traffic regulation' throughout the State," Ibid. (quoting Visidor Corp. v. Cliffside Park, 48 N.J. 214, 223 (1966)).

In 2008, the Legislature amended the first sentence of N.J.S.A. 39:4-197 to include a carve-out provision to allow municipalities to adopt ordinances "otherwise provided in" N.J.S.A. 39:4-8. N.J.S.A. 39:4-8(a) provides in part:

> Except as otherwise provided in this section, no ordinance, resolution, or regulation concerning, regulating, or governing traffic or traffic conditions, adopted or enacted by any board or body having jurisdiction over highways, shall be of any force or effect unless the same is approved by the commissioner, according to law. The commissioner shall not be required to approve any such ordinance, resolution, or regulation, unless, after investigation by the commissioner, the same shall appear to be in the interest of safety and the expedition of traffic on the public highways. The commissioner's investigation need not include more than a review of the ordinance, resolution, or regulation, and the supporting documentation submitted by a board or body having jurisdiction over highways, unless the commissioner determines that additional investigation is warranted.

A-2095-18T4

The plain language of N.J.S.A. 39:4-8(a) contemplates that municipalities may pass measures—including ordinances—governing traffic conditions on its highways. Indeed, we have long recognized that governing bodies

> "must act when assembled at stated or special meetings, and organized with a president to conduct, and a clerk to record, its proceedings. Such body can hardly act in any other manner than by ordinance or resolution. Every act must be by a vote of the members present; and, whether it is called an order, direction[,] or determination, it is still a resolution, because it must be resolved on, upon a motion made by some member." Dey v. Jersey City, 19 N.J. Eq. 412[, 416 (Ch. Div. 1869)]. All through our numerous cases dealing with municipal action, it will be seen that a board or body can act only by ordinance or resolution; these are the alternative methods. Any action of the body which does not rise to the dignity of an ordinance, is a resolution.
>
> [Woodhull v. Manahan, 85 N.J. Super. 157, 166 (App. Div. 1964) (emphasis added) (quoting Town of Irvington v. Ollemar, 128 N.J. Eq. 402, 406 (Ch. Div. 1940), aff'd o.b. sub nom. Irvington Nat'l Bank v. Geiger, 131 N.J. Eq. 189 (E. & A. 1942)), aff'd o.b., 43 N.J. 445 (1964).]

See also N.J.S.A. 40:48-2. Thus, contrary to the Commissioner's argument on appeal that the Borough "must address traffic concerns within the law," the passage of the ordinances was the Borough's only legal mode of action. Indeed, the Legislature contemplated that traffic ordinances would be passed and submitted to the Commissioner. N.J.S.A. 39:4-8(a).

Of course, per N.J.S.A. 39:4-8(a), the ordinances were not "of any force or effect unless the same is approved by the commissioner, according to law." See also N.J.S.A. 39:4-202. The Legislature expressed a specific process for approval that required the Commissioner to conduct an investigation which "need not include more than a review of the ordinance, resolution, or regulation, and the supporting documentation submitted by a board or body having jurisdiction over highways, unless the commissioner determines that additional investigation is warranted." N.J.S.A. 39:4-8(a). The Legislature also provided: "The commissioner shall not be required to approve any such ordinance, resolution, or regulation, unless, after investigation by the commissioner, the same shall appear to be in the interest of safety and the expedition of traffic on the public highways." Ibid.

We deduce from the statute's plain language that the Commissioner's determination to approve or disapprove of a submitted ordinance must be made "after" the prescribed investigation, and must include an analysis of whether the ordinance proposed for approval appears "to be in the interest of safety and the expedition of traffic on the public highways." Ibid. (emphasis added).

Other parts of N.J.S.A. 39:4-8(a) also provide support for our determination that the Commissioner is required to conduct a full review of the

11                                                    A-2095-18T4

ordinances, instead of summarily dismissing them after a review of their language.  See Fiore v. Consol. Freightways, 140 N.J. 452, 466 (1995) (holding "[a] statute should be read as a whole and not in separate sections").  Again, we turn to the plain language of N.J.S.A. 39:4-8(a):

> Where the commissioner's approval is required, a certified copy of the adopted ordinance, resolution, or regulation shall be transmitted by the clerk of the municipality or county, as applicable, to the commissioner within [thirty] days of adoption, together with:  a copy of the municipal or county engineer's certification, a statement of the reasons for the municipal or county engineer's decision, detailed information as to the location of streets, intersections, and signs affected by the ordinance, resolution, or regulation, and traffic count, crash, and speed sampling data, when appropriate. The commissioner may invalidate the provisions of the ordinance, resolution, or regulation if the commissioner finds that the provisions of the ordinance, resolution, or regulation are inconsistent with the Manual on Uniform Traffic Control Devices for Streets and Highways, inconsistent with accepted engineering standards, are not based on the results of an accurate traffic and engineering survey, or place an undue traffic burden or impact on the State highway system, or affect the flow of traffic on the State highway system.

The statutory wording is clear.  The documentation supporting the ordinances must be submitted by the municipality.  As part of the required "investigation," the Commissioner must review it.   And, if the Commissioner chooses to invalidate the ordinance, she must find that the ordinance's provisions

are inconsistent with the Manual on Uniform Traffic Control Devices for Streets and Highways, inconsistent with accepted engineering standards, are not based on the results of an accurate traffic and engineering survey, or place an undue traffic burden or impact on the State highway system, or affect the flow of traffic on the State highway system.

[N.J.S.A. 39:4-8(a).]

Those supporting materials are not, as contended by the Commissioner, extrinsic material to be used to interpret statutes and, thus, need not have been reviewed. They were submissions required by N.J.S.A. 39:4-8(a) for substantive review by the Commissioner before she made her decision.

While generally, courts accord "substantial deference to the interpretation an agency gives to a statute that the agency is charged with enforcing," Plata v. Div. of Alcoholic Beverage Control, 360 N.J. Super. 92, 99 (App. Div. 2003), "an administrative agency may not, under the guise of interpretation, extend a statute to give it a greater effect than its language permits," ibid. (quoting GE Solid State, Inc. v. Dir., Div. of Taxation, 132 N.J. 298, 306 (1993)). We are convinced the Legislature clearly set forth a comprehensive plan for a municipality to present traffic problems to the Commissioner for a thorough review of its proposed solution, as set forth in a proposed ordinance, and for the submitted support for its proposal. The Commissioner is statutorily obligated

13

to review, not only the ordinance, but also the statutorily-mandated submissions, and to analyze same under the statute's criteria, before approving or invalidating the ordinance. That statutory scheme—set forth in the statutes that we have perpended—recognizes that local governments may perceive problems that impact on more than its local streets, as well as the authority of the Commissioner to evaluate the problem and proposed solution. The review procedure set forth in N.J.S.A. 39:4-8(a) allows the Commissioner to exercise that authority while allowing municipalities to present its traffic concerns. That procedure, as mandated by the Legislature, requires more than a cursory review of the ordnances' language, although, to the extent suggested by the Borough's merits brief, a hearing is not part of the statutory review scheme.

We are not persuaded by the Commissioner's legal determination that the 1955 Attorney General opinion sanctioned her action. First, the opinion is not binding on this court. Opderbeck v. Midland Park Bd. of Educ., 442 N.J. Super. 40, 56 (App. Div. 2015). Moreover, the opinion addressed the statutory authority of a municipality to pass a "no through" street ordinance under N.J.S.A. 39:4-197, as it then existed. It did not analyze the process set forth in N.J.S.A. 39:4-8(a), although it did allow that a "through" street ordinance was

A-2095-18T4

not effective unless approved by the Director of the Division of Motor Vehicles[2] "because N.J.S.A. 39:4-202 provides: 'No . . . ordinance . . . passed, enacted or established under authority of this article, shall be effective until submitted to and approved by the director as provided in section 39:4-8 of this Title.'" Attorney General Formal Opinion 1955 – No. 5 (Mar. 4, 1955) (quoting N.J.S.A. 39:4-202). As we have concluded, that provision sets forth the procedure the Commissioner should have utilized.

In light of our decision, we need not reach the constitutional arguments raised by the Borough. O'Keefe v. Passaic Valley Water Comm'n, 132 N.J. 234, 240 (1993).

We reverse the Commissioner's final decision and remand this matter to the Commissioner for proceedings consistent with this opinion. We do not suggest any particular outcome and leave to the Commissioner the question of the ordinances' approval. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[2] As previously noted, the powers and duties previously exercised by the Director of the Division of Motor Vehicles were transferred to the Commissioner on July 1, 1969. N.J.S.A. 27:1A-44.

A-2095-18T4