270 N.J. Super. 323 (1994)
637 A.2d 197
DR. PAO-KUO CHIN, PLAINTIFF-RESPONDENT,
v.
COVENTRY SQUARE CONDOMINIUM ASSOCIATION, DEFENDANT-APPELLANT.
ARTHUR CHESLEY, ET ALS., PLAINTIFFS-RESPONDENTS,
v.
COVENTRY SQUARE CONDOMINIUM ASSOCIATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 5, 1994.
Decided February 4, 1994.
*325 Before KING, HAVEY and A.A. RODRIGUEZ.
Gary S. Beninson, argued the cause for appellant (Goldman & Beninson, attorneys; Mr. Beninson on the brief).
John W. O'Mara, argued the cause for the Chesley respondents (Boglioli, O'Mara, Reynolds & Mirra, attorneys; Mr. O'Mara on the joint brief).
Dr. Pao-Kuo Chin, respondent, argued pro se (Dr. Chin on the joint brief).
The opinion of the court was delivered by HAVEY, J.A.D.
Coventry Square Condominium Association appeals from a judgment, entered after our remand, declaring invalid a $375 fee *326 charged by the Association to condominium owners each time they rented their units. The judgment also compels the Association to refund over $90,000 to the owner-landlords, representing fees collected since 1989. We conclude that a condominium association may charge a rental fee, provided the fee is reasonably related to the actual cost of reviewing the rental transaction and inspection of the rented unit. We reverse and remand with direction that the Law Division judge fix the rental fee, based on the reasonable costs incurred by the Association.
Coventry Square, a condominium complex situate in Lakewood, Ocean County, consists of 633 units, approximately forty-percent of which are rented to tenants by unit owners. Historically, the Association has resisted the trend toward leasing units in the complex. In 1977, the Association passed a regulation requiring that owners of rental units deposit $225 with the Association as security for expenses such as glass breakage and excessive watering during the tenancy. The fee was declared invalid in Coventry Square Condo. Ass'n v. Halpern, 181 N.J. Super. 93, 436 A.2d 580 (Cty.Ct. 1981). Also, in May 1982, the bylaws of the Association were amended to impose several conditions on the rental of units. Pertinent here are the amended bylaws that require: (1) submission of the proposed lease to the Board of Directors fifteen days prior to its effective date for review and approval;[1] (2) production of a certificate of occupancy from the Township of Lakewood certifying that the unit has passed municipal inspection; and (3) proof by the owner that he or she is in good standing with the Association. Until 1989, the Association charged an "administration-inspection" fee of $125 each time a unit was rented. In early 1989, the fee was increased to $375. According to the Association, the increase was necessary to defray the cost of processing and review of the proposed lease and inspection of the common elements contained within the unit.
*327 Plaintiffs, owners of approximately forty units, filed these consolidated actions seeking to invalidate an array of bylaws as well as the $375 administration-inspection fee. After a bench trial, the Law Division judge concluded that the fee was sustainable under the "business judgment" rule. In an unreported opinion dated July 15, 1992 (A-4721-90T1), certif. granted, 130 N.J. 598, 617 A.2d 1221 (1992), appeal dismissed, 133 N.J. 418, 627 A.2d 1129 (1993), we reversed and remanded with direction that the judge determine whether the $375 fee was reasonably related to the cost incurred by the Association, and if not, to "reduce the fees accordingly, so that the owner/landlords are not subject to a double assessment."[2] On remand, apparently misconstruing our opinion, the judge found that the $375 figure was unreasonable and invalidated the entire fee. He also ordered that the Association refund all of the fees paid since January 1989, totalling $90,000.
We are again compelled to reverse and remand. For purposes of clarification, we reiterate several pertinent legal principles developed in our prior unreported opinion.
We have no doubt that the Condominium Act, N.J.S.A. 46:8B-1 to -38, authorizes the assessment of a rental fee. The Act gives the condominium association the power, indeed the responsibility, to govern the common elements and common facilities used by the unit owners. N.J.S.A. 46:8B-14(a); Thanasoulis v. Winston Towers 200 Ass'n, 110 N.J. 650, 656, 542 A.2d 900 (1988). "Common elements" include the foundations, structural and bearing parts, supports, main walls, roofs, basements and halls, many such facilities being contained within the units themselves. N.J.S.A. 46:8B-3d. To that end, the association is given reasonable access to each unit for the purpose of maintaining, repairing *328 or replacing common elements therein. N.J.S.A. 46:8B-15(b). We may reasonably conclude from this statutory scheme that the association is empowered to inspect a unit upon the commencement of, or change in, a tenancy to assure that common elements have not been damaged. Inspection allows for prompt repair and a determination by the association as to which party is responsible for the damage. There is also little doubt that the association may review the proposed lease to assure that both the owner and prospective tenant will comply with the Master Deed, bylaws and other rules pertaining to rentals.
The costs attendant to such review and inspection should not be deemed "common expenses," N.J.S.A. 46:8B-3e; N.J.S.A. 46:8B-17, since they are not incurred for a beneficial object common to all of the owners within the complex: they arise solely because of the owner's choice to lease the unit rather than to occupy it. Therefore, the costs should be recouped by the association by a "remedial assessment" similar to that made against a unit owner for minor repairs to his or her unit. See Wendell A. Smith, New Jersey Condominium Law, §§ 6:7.13; 6:7.14 (1990); Gary A. Poliakoff, Law of Condominium Operations § 5:12 (1988). Moreover, N.J.S.A. 46:8B-21 imposes a lien upon each unit for any "unpaid assessment duly made by the association for a share of common expenses or otherwise [.]" (Emphasis added). This statutory language strongly suggests that the reasonable costs of "rental review" and inspection may be passed on to the owner-landlords as assessments beyond the general assessment for common expenses.
As stated, the Law Division judge initially sustained the $375 fee by applying the "business judgment" rule. That rule, applied by Justice Garibaldi in her dissent in Thanasoulis, 110 N.J. at 664-66, 542 A.2d 900 (Garibaldi, J., dissenting in part; concurring in part), establishes a two-prong test to determine whether the association has breached its fiduciary duty in adopting the challenged bylaw: (1) whether the Association's actions were authorized by statute or by its own bylaws or Master Deed, and if so, *329 (2) whether the action is fraudulent, self-dealing or unconscionable. See also Siller v. Hartz Mountain Assoc., 93 N.J. 370, 382, 461 A.2d 568, cert. denied, 464 U.S. 961, 104 S.Ct. 395, 78 L.Ed.2d 337 (1983); Papalexiou v. Tower West Condo., 167 N.J. Super. 516, 527, 401 A.2d 280 (Ch.Div. 1979). The "business judgment" rule contrasts sharply with the "reasonableness" standard and with rule-making according to constitutional or administrative agency standards. For a discussion of these various standards and pertinent cases, see Judge Cohen's dissent in Thanasoulis v. Winston Tower 200 Ass'n, 214 N.J. Super. 408, 420, 519 A.2d 911 (App.Div. 1986) (Cohen, J.A.D., dissenting), rev'd, 110 N.J. 650, 542 A.2d 900. See also Note, "Judicial Review of Condominium Rulemaking," 94 Harv.L.Rev. 647 (1981).
We do not believe that the "business judgment" rule sustains the $375 fee. Regardless of what standard of review is applied, a bylaw amendment "should not create invidious classifications or unfairly diminish the rights of some unit owners for the benefit of others." Thanasoulis, 214 N.J. Super. at 420, 519 A.2d 911 (Cohen, J.A.D., dissenting).
The claim here is that the $375 fee is a discriminatory revenue-raising device assessed only against a discrete class of unit owners. In Thanasoulis, our Supreme Court held invalid a condominium rule which charged resident-owners $25 per month for the rental of a parking space, and nonresident-owners $75 per month. 110 N.J. at 653, 542 A.2d 900. The Court focused on whether the disparate treatment of nonresident owners was authorized by the Act. Id. at 660-61, 542 A.2d 900. It first found that the $75 charge to nonresident owners violated N.J.S.A. 46:8B-6, which vests in all unit owners, residents and nonresidents, a proportionate undivided interest in the common elements and the right to rent parking spaces. Ibid. Second, and pertinent here, the Court held that the $75 charge constituted an unlawful assessment upon the nonresident owners:
Under the Act, plaintiff is only proportionately liable for his share of the common expenses, N.J.S.A. 46:8B-3e, determined on the basis of plaintiff's proportionate *330 undivided interest in the common elements. N.J.S.A. 46:8B-9(g). Another vice of the parking fee regulation is that the higher fees paid by nonresident owners necessarily reduce the common-elements charge apportioned among all owners. In effect, defendant has required plaintiff, through his tenant, to contribute three times more money to the common-expense fund for parking privileges than do other unit owners who do not rent their units. The result is that plaintiff is compelled to bear a disproportionate share of the common expenses.
[Id. at 661, 542 A.2d 900.]
The reasoning of Thanasoulis applies here. It requires us to decide whether the $375 aggregate fee is reasonably related to the cost of review of the proposed lease and inspection of the unit. If not, the fee is nothing more than a revenue-raising device which results in the owner-landlord's payment of a disproportionate share of the common expenses. Stated differently, the excessive fees paid into the Association's general account necessarily reduce the common-elements charge paid by all owners at the expense of the owner-landlords. The consequence is essentially the same kind of disparate treatment condemned by the Court in Thanasoulis.
Accordingly, we again remand to the Law Division. The judge must determine what expenses of the Association are directly related to the rental procedure. Presumably, there are administrative and personnel costs incurred in review of a proposed lease to assure compliance with the Master Deed and bylaws, as well as local ordinances and building codes. The Association may also incur legitimate expenses in checking the prospective tenant's prior rentals for claims of damage to rental property and other pertinent information. No doubt there are also costs attributable to the Association's inspection of the common elements in the unit.[3] The Law Division judge may identify other Association expenses legitimately related to the rental transaction, and must then determine whether the $375 fee is justified based upon all reasonable costs. If not, the judge shall reduce the fee accordingly *331 so that the owner-landlords are not subject to a duplicate assessment.
A question is raised as to burden of proof. Since the condominium association is empowered to charge a rental fee, the owner-landlord who claims that the fee is a discriminatory revenue-raising device has the burden of demonstrating a prima facie case of disparate treatment. Upon such a showing, the association has the burden of going forward with evidence demonstrating that the fee is reasonably related to the costs incurred by it. Such a shift in the burden is fair since the association is the party possessing the data and records relating to the pertinent costs. Cf. NOPCO Chemical Div. v. Blaw-Knox Company, 59 N.J. 274, 282-83, 281 A.2d 793 (1971) (in transportation-bailment case, once plaintiff proves damages and identity of defendants, burden shifts to "those parties most likely to possess knowledge of the occurrence to come forward with the facts peculiarly within their possession"); Fosgate v. Corona, 66 N.J. 268, 272-73, 330 A.2d 355 (1974) (burden shifts to defendant-physician in preexisting injury, malpractice case because physician is in better position than plaintiff to separate harm caused by the malpractice from the preexisting condition); see also Bendar v. Rosen, 247 N.J. Super. 219, 233, 588 A.2d 1264 (App.Div. 1991); Sholtis v. American Cyanamid Company, 238 N.J. Super. 8, 29-30, 568 A.2d 1196 (App.Div. 1989).
Here, plaintiffs have already made such a prima facie showing. For example, during the initial trial they established that in 1989 the Association increased the fee from $125 to $375. In 1989 alone, the Association collected $35,625 (95 rented units x $375). The Law Division judge expressly rejected as suspect the reasons the Association gave as to why the substantial increase was necessary, and questioned whether the costs to the Association came close to the revenue raised. Therefore, on remand, the Association has the burden of coming forward with explanatory evidence to sustain the present fee. In our view, additional testimony and proofs must be adduced for resolution of this issue.
*332 Reversed and remanded for further proceedings. Jurisdiction is not retained.
NOTES
[1] There is no claim here that there has ever been indiscriminate refusal to approve a tenant.
[2] Counsel advise us that the Supreme Court granted certification solely on the issue, raised in the original complaint, as to the validity of a bylaw which prohibited tenants from using common facilities. The validity of the $375 rental fee was not raised. In any event, the Supreme Court dismissed the appeal. See 133 N.J. at 418, 627 A.2d 1129.
[3] There is evidence that such an inspection is distinctly different from that undertaken by the municipality, since the local code enforcer does not necessarily focus on the condition of the common elements.