766 A.2d 1186 (2001)
337 N.J. Super. 293
Elinor MULLIGAN, Plaintiff-Appellant/Cross-Respondent,
v.
PANTHER VALLEY PROPERTY OWNERS ASSOCIATION, a New Jersey Non-Profit Corporation, and Thomas S. Brooks, Kevin M. Hahn, William Herpich, Edward Niedzinski, Scott M. Minter, Jean Kahn, Art Horning, Frank J. Vanore, and Mary Ann Maniace, Individually and as Members of the Board of Trustees of Panther Valley Property Owners' Association, Defendants-Respondents/Cross-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued December 11, 2000.
Decided February 16, 2001.
*1188 Scott William Miller, argued the cause for appellant/cross-respondent (Mulligan & Mulligan, Hackettstown, attorneys; John Musarra, Trenton, on the brief).
Marilyn S. Silvia, Princeton, argued the cause for respondents/cross-appellants (Hill Wallack, attorneys; Gerard H. Hanson, of counsel; Ms. Silvia, on the brief).
Before Judges WEFING, CUFF and LEFELT.
*1187 The opinion of the court was delivered by WEFING, J.A.D.
Plaintiff owns a home in Panther Valley, a private common-interest residential community in Warren County. Defendant Panther Valley Property Owners Association (Association) is a non-profit corporation that was organized in 1968 for the purpose of governing the community. The Association acts through an elected Board of Trustees; the individual defendants are members of the Association's Board. Plaintiff, as a result of her home ownership, is a member of the Association.
In October 1998, the Association, through a vote of its membership, adopted six amendments to the community's Declaration of Covenants and Restrictions (Declarations) and the Association's bylaws. Plaintiff filed suit challenging five of those amendments. The trial court upheld three of the amendments and struck down two. The parties appeal and cross-appeal from the trial court's judgment. After a careful review of the entire record in light of the arguments advanced on appeal, we affirm in part and reverse in part.
*1189 The first of these amendments declared, in substance and effect, that no individual registered as a Tier 3 offender under N.J.S.A. 2C:7-8(c)(3) ("Megan's Law") could reside in Panther Valley. Tier 3 is the highest classification within Megan's Law. In order for an individual to be classified as a Tier 3 registrant, that individual must be a sex-offender who has been deemed to pose a high risk of re-offending. Factors that inform the decision whether an individual poses a high risk of re-offending include whether the conduct involved repetitive and compulsive behavior, N.J.S.A. 2C:7-8b(3)(a); whether the individual served the maximum term of confinement, N.J.S.A. 2C:7-8b(3)(b); and whether the sexual offense was committed against a child, N.J.S.A. 2C:7-8b(3)(c). Because such an individual poses a substantial risk to the community, the statute directs that notification of the presence of a Tier 3 offender within the community be more widespread than that provided in the instance of a Tier 1 or Tier 2 offender, who have been deemed to pose low and moderate risks of re-offending. The trial court upheld the amendment precluding such Tier 3 registrants from residing within Panther Valley.
The second amendment authorized the Association to file with the Warren County Clerk a "Notice of Continuing Violation" if a member persisted in violating Panther Valley's Declaration or the Association's bylaws or rules. The trial court concluded that amendment was invalid because it did not require the Association to give notice to a member before filing such a Notice.
The third amendment provided that an owner could be liable for the Association's counsel fees and costs if the Association were required to file suit to enforce the Declaration, its bylaws or rules. The trial court struck down that amendment.
The fourth amendment set forth a procedure governing a member's inspection of the Association's books and records. The trial court concluded the amendment was facially valid.
The fifth amendment established minimum qualifications for members who wished to be elected to the Association's Board of Trustees. The trial court again concluded the amendment was facially valid.

I
The threshold issue to be determined is the proper standard governing judicial review of these amendments. It is important to note that plaintiff's challenge to the validity of these amendments does not revolve around the manner in which they were adopted, e.g., compliance with procedural requirements. Rather, her challenge is directed to the substance of the amendments themselves.
Plaintiff contends in essence that the amendments should be measured under a test of reasonableness. She asserts that each of these amendments fail that test. She maintains that each of these amendments represents a diminution of her ownership rights and, in consequence, is invalid. Defendants, on the other hand, assert that the amendments should be analyzed under what is termed the business judgment rule to determine if they are authorized by statute and the applicable documents governing the parties' relationship and to see if they violate any constitutional or statutory provision or conflict with public policy; defendants assert the amendments are entitled to a presumption of validity. According to defendants, each of these amendments represents an authorized action by the membership.
There is no reported case in New Jersey which clearly resolves the question of what standard a reviewing court should employ in such a context, where the membership has voted to amend the community's Declaration and the Association bylaws. Other reported cases in New Jersey which have considered such amendments have, generally, arisen following action by the community's board of trustees. See, e.g., Thanasoulis v. Winston Towers 200 Ass'n, 110 N.J. 650, 542 A.2d 900 (1988), in *1190 which the Court struck down two amendments to the association's rules and regulations adopted by the board. In Siller v. Hartz Mountain Assocs., 93 N.J. 370, 382, 461 A.2d 568 (1983), in the context of a suit by individual unit owners to prevent settlement between the condominium developer and the condominium association of claims related to alleged defects in construction, the Court spoke of the association's board occupying a position analogous to a corporation's board of directors. Perhaps the clearest explication of the business judgment rule is contained in Papalexiou v. Tower West Condominium, in which individual unit owners challenged the authority of the board to levy a special emergency assessment upon the membership. In upholding the assessment, the court said:
The refusal to enforce arbitrary and capricious rules promulgated by governing boards of condominiums is simply an application of the "business judgment" rule. This rule requires the presence of fraud or lack of good faith in the conduct of a corporation's internal affairs before the decisions of a board of directors can be questioned. If the corporate directors' conduct is authorized, a showing must be made of fraud, self-dealing or unconscionable conduct to justify judicial review.... Although directors of a corporation have a fiduciary relationship to the shareholders, they are not expected to be incapable of error. All that is required is that persons in such positions act reasonably and in good faith in carrying out their duties. Courts will not second-guess the actions of directors unless it appears that they are the result of fraud, dishonesty or incompetence.
[Papalexiou v. Tower West Condo., 167 N.J.Super. 516, 527, 401 A.2d 280 (Ch.Div.1979) (citations omitted).]
In Chin v. Coventry Square Condominium Ass'n, 270 N.J.Super. 323, 637 A.2d 197 (App.Div.1994), we considered amendments to the association's bylaws. It is not possible to tell from the opinion whether the challenged amendments were passed by the association's board or the membership as a whole. In our decision, however, we noted the existence of these two tests and concluded that the challenged amendments could not withstand scrutiny even under the business judgment rule. 270 N.J.Super. at 329, 637 A.2d 197.
We pause first to note the unique nature of Panther Valley. It is a gated residential community located within the Township of Allamuchy; it is comprised of more than 2,000 homes, including single-family homes, townhouses and condominium units. State v. Panther Valley Prop. Owners Ass'n, 307 N.J.Super. 319, 322, 704 A.2d 1010 (App.Div.1998) (holding that the Association, having asked the Warren County Prosecutor to assume jurisdiction to enforce the provisions of Title 39 over its private roads, lacked the authority to impose independent fines upon its members who committed traffic violations within its borders). The development itself, in light of the mix of ownership types, is not a condominium development but is more properly referred to as a "common interest development." Id. at 327, 704 A.2d 1010. The Association as a whole is thus not subject to the terms and provisions of the Condominium Act, N.J.S.A. 46:8B-1 to -38, Id. at 328, 704 A.2d 1010, for only "[a] small minority of the units are governed by the Condominium Act." Id. at 327, 704 A.2d 1010. In certain contexts, however, the condominium statute may be considered "instructive" and looked to for guidance. Id. at 332, 704 A.2d 1010.
Although Justice Schreiber noted in Siller that there is some authority for the proposition that condominium ownership existed as long ago as ancient Rome, Siller, supra, 93 N.J. at 375, n. 4, 461 A.2d 568, such common interest developments are generally considered a relatively recent phenomenon. Carl B. Kress, Beyond Nahrstedt: Reviewing Restrictions Governing Life in a Property Owner Association, 42 UCLA L.Rev. 837, 842 (1995), (hereinafter Kress). Common interest developments are the fastest growing form of housing in the United States. Armand Arabian, Condos, Cats, and CC & RS: *1191 Invasion of the Castle Common, 23 Pepp. L.Rev. 1, (1995), (hereinafter Arabian). New Jersey is among the states in which residential community associations are most common. David J. Kennedy, Residential Associations as State Actors: Regulating the Impact of Gated Communities on Nonmembers, 105 Yale L.J. 761, 793, n. 24 (1995), (hereinafter Kennedy). The law governing the relationships among an association, its board and its members has been described as being "in its infancy, or at best early adolescence...." Stewart E. Sterk, Minority Protection in Residential Private Governments, 77 B.U. L.Rev. 273, 307 (1997). One indication that the courts are, indeed, grappling with new concepts is the split that exists in the different approaches of different jurisdictions.
California, for instance, has adopted the "reasonableness" test, Nahrstedt v. Lakeside Village Condominium Ass'n, 8 Cal.4th 361, 33 Cal.Rptr.2d 63, 878 P.2d 1275 (1994), while New York has adopted the "business judgment" rule. Levandusky v. One Fifth Avenue Apartment Corp., 75 N.Y.2d 530, 554 N.Y.S.2d 807, 553 N.E.2d 1317 (1990). Some courts and commentators recognize a distinction between considering original recorded restrictions, i.e., those extant at the time of purchase, and later-adopted ones. Ridgely Condo. Ass'n v. Smyrnioudis, 105 Md. App. 404, 660 A.2d 942, 948 (1995), aff'd 343 Md. 357, 681 A.2d 494 (1996); Sterk, supra, 77 B.U. L.Rev. at 338-39. Other cases turn upon whether the restriction at issue was improperly incorporated in the association's bylaws, rather than the community's underlying declaration. Shorewood West Condo. Ass'n v. Sadri, 140 Wash.2d 47, 992 P.2d 1008 (2000) (leasing restriction contained in amendment to bylaws rather than the condominium declaration unenforceable).
The majority of jurisdictions appear to employ the reasonableness standard. Arabian, supra, 23 Pepp. L.Rev. at 11. We are satisfied that, in the context of this case, the appropriate test to measure the validity of these amendments is that of reasonableness. We reach that conclusion for several reasons. First, we recognize that we are dealing with amendments to the documents governing life at Panther Valley, as opposed to original provisions. None of the terms to which plaintiff objects were contained within the Declaration and bylaws to which she gave her assent by her decision in 1976 to purchase a home at Panther Valley. As amendments, we do not consider them entitled to the "very strong presumption of validity" that some courts have attached to restrictions imposed by a common interest community from the outset of its development. Ridgely, supra, 660 A.2d at 947, quoting Hidden Harbour Estates, Inc. v. Basso, 393 So.2d 637, 639 (Fla.App. 4 Dist. Ct.1981).
Additionally, we note that under Section 4 of Article XI of the Declaration, the Declaration can be amended at any time by a simple majority vote of the Association's members. By contrast, many common interest communities permit amendments to the declaration only by a substantial majority of the owners, thus affording greater protection to the affected parties. Kress, supra, 42 UCLA L.Rev. at 841. This, for example, is the approach of the Uniform Common Interest Ownership Act, a statute that has been passed in a number of states, although not yet in New Jersey.
Finally, these amendments were passed by the membership as a whole, rather than the Association's board of trustees. Thus, the analytical framework which provides the justification for the business judgment rule, see Papalexiou, supra, is absent.
Because these amendments all reflect changes adopted substantially after plaintiff took up residence at Panther Valley, and because the governing documents require no more than a simple majority vote, we are unwilling to afford them the presumption of validity for which defendants contend. We are satisfied that plaintiff is entitled in the context of this case to have these amendments judged on their reasonableness.

*1192 II
We turn then to the amendments at issue. We have concluded that the second amendment, which authorizes the filing of a Notice of Continuing Violation, does not pass the test of reasonableness but that the third, fourth and fifth amendments do pass that test. As to the first amendment, however, which precludes residency at Panther Valley by a Tier 3 offender, we decline to pass upon the issue for we are satisfied that the parties did not create a sufficient record in this matter, which was handled as a summary proceeding, to permit a reviewing court to reach a decision that can take into account and reflect the various competing policy considerations.
Plaintiff asserts three reasons why this first amendment is invalid. She contends that it is an unlawful infringement on her right to alienate her property, that it compels her to violate the law by obligating her to seek out and identify such Tier 3 registrants and that it is contrary to public policy. The first two are wholly insubstantial in our view and if plaintiff's argument were confined to them, we would reject her position out of hand.
Defendants have supplied as part of the record in this case statistics that were compiled by the Office of the Attorney General in connection with its overall responsibility for monitoring Megan's Law matters. According to those figures, there were, as of July 30, 1999, only 80 Tier 3 registrants within the entire State of New Jersey. New Jersey has, as of the 2000 census, a population in excess of 8,400,000; that there may be 80 individuals out of a total of 8.4 million to whom plaintiff may not sell her home cannot, in our judgment, seriously be considered an unlawful restriction upon her right to sell or lease her home.
In addition, the restriction, if indeed it can be considered one, does not fall unfairly upon plaintiff; it affects all members of the Association equally. Thus, plaintiff, if she sought to sell or lease her home, would not be relegated to a smaller potential market than another Panther Valley resident. ("Courts appear[ ] far more likely to reject changes that involved potential special privileges for individuals than they [are] to reject changes applicable to the entire population of unit owners." Patrick A. Randolph, Jr., Changing the Rules: Should Courts Limit the Power of Common Interest Communities to Alter Unit Owners' Privileges in the Face of Vested Expectations?, 38 Santa Clara L.Rev. 1081, 1082 (1998).) And it cannot escape remarking that the record is entirely barren of any indication that plaintiff has any present plans to sell or lease her home to anyone. To the extent plaintiff is seeking to vindicate the rights of a Tier 3 registrant to reside in Panther Valley, she is not the proper party. "Ordinarily, a litigant may not claim standing to assert the rights of the third party." State, Dep't of Envtl. Prot. & Energy v. Dopp, 268 N.J.Super. 165, 173, 632 A.2d 1270 (App. Div.1993), quoting Jersey Shore Med. Ctr. v. Estate of Baum, 84 N.J. 137, 144, 417 A.2d 1003 (1980).
Her second asserted reason flies in the face of the plain language of the amendment. It imposes no such obligation upon her.
The third, however, gives us pause, at least in one regard. Although not contained within the record before us, we are aware that other similar common interest communities within the State have passed similar restrictions upon residency by Tier 3 registrants. 156 N.J.L.J. 361 (May 3, 1999). We do not know from the record how many common interest communities exist within the State and we do not know from the record how many of those communities have seen fit to adopt comparable restrictions and whether they have determined to include a broader group than Tier 3 registrants. We are thus unable to determine whether the result of such provisions is to make a large segment of the housing market unavailable to one category of individual and indeed perhaps to approach "the ogre of vigilantism and *1193 harassment," the potential dangers of which the Supreme Court recognized even while upholding the constitutionality of Megan's Law. Doe v. Poritz, 142 N.J. 1, 110, 662 A.2d 367 (1995).
The record is deficient in another regard as well for it is entirely unclear if the Association performs quasi-municipal functions, such that its actions perhaps should be viewed as analogous to governmental actions in some regards. As to this issue, see, e.g., Kennedy, supra, 105 Yale L.J. 761; John B. Owens, Westec Story: Gated Communities and the Fourth Amendment, 34 Am.Crim. L.Rev. 1127 (1997). We do know, from State v. Panther Valley, supra, that the Association has turned over to the township the responsibility for traffic enforcement, for instance, and is precluded from acting independently in that sphere. The record does not disclose whether certain services are provided by the township and others by the Association. It may be somewhat instructive in this regard that we have concluded in another matter involving Panther Valley that the Association's newsletter, "The Panther," could not be compelled to publish an ad submitted by the plaintiff that was apparently critical of the local first-aid squad. William G. Mulligan Found. for the Control of First Aid Squadders & Roving Paramedics v. Brooks, 312 N.J.Super. 353, 711 A.2d 961 (App.Div. 1998).
We recognize, of course, that Tier 3 registrants (and indeed convicted criminals) are not a protected group within the terms of New Jersey's Law Against Discrimination. N.J.S.A. 10:5-3. Nor have we been pointed to any authority deeming them handicapped. In this regard, however see Arnold Murray Constr., L.L.C. v. Hicks, 621 N.W.2d 171 (S.D.2001), in which the court upheld the eviction of a handicapped tenant who posed a direct threat to the health and safety of other tenants without the necessity of attempting to provide reasonable accommodations under the federal Fair Housing Act. It does not necessarily follow, however, that large segments of the State could entirely close their doors to such individuals, confining them to a narrow corridor and thus perhaps exposing those within that remaining corridor to a greater risk of harm than they might otherwise have had to confront.
Common interest communities fill a particular need in the housing market but they also pose unique problems for those who remain outside their gates, whether voluntarily or by economic necessity. The understandable desire of individuals to protect themselves and their families from some of the ravages of modern society and thus reside within such communities should not become a vehicle to ensure that those problems remain the burden of those least able to afford a viable solution.
We hasten to add that we recognize that not all gated communities are refuges for the wealthy. They are a spreading phenomenon that can be found among all economic strata. Owens, supra, 34 Am.Crim. L.Rev. at 1136-37. Their growth has been fueled by the public's fear of crime and need for safety. Ibid.; Kennedy, supra, 105 Yale L.J. at 766.
The Supreme Court has long cautioned against the dangers inherent in courts, presented with a meager record, ruling upon questions having a broad social and legal impact. Jackson v. Muhlenberg Hosp., 53 N.J. 138, 249 A.2d 65 (1969). Although the Supreme Court concluded in Doe v. Poritz, supra, that it had no basis to overturn the legislative judgment "that public safety was more important than the potential for [an] unfair ... impact...." 142 N.J. at 110, 662 A.2d 367, it did so on the basis of a fully-formed record. We decline to write a solution for a problem that has not been fully stated.
Because we have concluded, for the reasons we have set forth, that the record was insufficient to permit determination of the issue, we reverse that portion of the trial court's judgment upholding the validity of the first amendment to the Association's Declaration.
We have considered whether the paucity of the record is a matter that could *1194 be cured upon remand. We have, however, determined that a remand is not appropriate. We see no reason to depart from the general practice that a plaintiff who failed initially to present sufficient evidence to the trial court is, ordinarily, not entitled to a remand to cure that deficiency.

III

A
We turn now to plaintiff's remaining challenges to the trial court's judgment. The membership voted to amend the Association's bylaws on the subject of a member's inspection of the Association's books and records. Prior to amendment, Article XIV of the bylaws provided that "all books, records, papers and files of the Association shall be open, upon request" for inspection by a member. It also authorized inspection by an attorney or certified public accountant representing a member and, in appropriate instances, the township. Its only limitation was a reference to "reasonable business hours."
The amended article restricted such inspection to a review of the books for the current fiscal year and the two preceding fiscal years. It required a request for inspection to be in writing and to be served not less than ten business days before the requested date for inspection. It limited any one inspection to no more than two hours in length and provided that if all the records could not be reviewed in that time, an additional date would be provided within five business days. It authorized the Board to draft reasonable rules and regulations governing such inspections and further authorized the Board to withhold from inspection any documents that in "its reasonable business judgment" would
1. Constitute an unwarranted invasion of privacy.
2. Constitute privileged information under the attorney-client privilege.
3. Involve pending or anticipated litigation or contract negotiations.
4. Involve the employment, promotion, discipline, or dismissal of a specific committee member or employee.
Plaintiff argues that the ten-day notice requirement is illegal and that the amendment as a whole is too broad. She asserts that it restricts rights she previously possessed and will hamper members' attempts to assure themselves that the Association is being properly governed.
Her challenge to the legality of the ten-day notice requirement rests upon N.J.S.A. 15A:5-24c, a section of our Nonprofit Corporation Act which provides for inspection of a corporation's books and records "upon at least 5 days' written demand." Based upon that language, plaintiff asserts that the Association may not require ten days written notice. Plaintiff's argument disregards the statutory language, however; it refers to "at least" five days, it does not say "no more than five days."
In support of her contention that the amendment invalidly deprives her of rights she had previously possessed, she relies upon Ridgely Condominium Ass'n v. Smyrnioudis, supra. That case, however, dealt with an amendment that purported to restrict certain unit owners' use of their premises. This amendment places no restriction on plaintiff's use of her home or the common elements of the community.
As to her final argument of overbreadth, we agree with the trial court that it is better dealt with on a case-by-case basis. The members of the Association's board occupy a fiduciary position vis-a-vis the Association and the membership. Any response to a request for inspection of books and records must be made in good faith and cannot be structured with an eye to self-protection. Plaintiff has not hesitated in the past to seek judicial relief from Association actions she has considered improper. See, e.g., Mulligan Found. v. Brooks, supra; State v. Panther Valley Prop. Owners Ass'n, supra. We have no doubt that she will remain vigilant *1195 against the possibility of improper self-dealing or negligent governance. We thus affirm that portion of the trial court's judgment that upheld the fourth amendment.

B
Article VII of the Association's bylaws deals with the election of trustees. Prior to amendment, Section 2 of that article merely referred to appointment of a three-member nominating committee three months prior to the annual meeting. It specified that one member of the nominating committee, who would serve as its chairman, had to be a member of the current board and the two remaining, members of the Association. It directed the committee to solicit suggestions for possible candidates.
The amended Section 2 retained the compositional structure and time frame but added the following language:
Unless waived by resolution of the Board the minimum qualifications to be a candidate for a trustee position will be (a) the absence of any prior dismissal for cause from the Board of Trustees or a Committee, or (b) the absence of any conviction of a crime constituting a felony or a crime of moral turpitude. The Board of Trustees may, by resolution, adopt additional qualifications for candidates, provided, however, that the resolution must be approved by the affirmative vote of two-thirds of the fully constituted Board. If any Owner who meets the qualifications otherwise set forth in this paragraph obtains the signatures of other Owners representing 10 percent or more of the Lots endorsing the Owner's candidacy, and provides same to the Board at least 30 days prior to the date of the annual meeting, the Owner will not be required to satisfy the additional qualifications set forth in a resolution of the Board adopted under this section, and the name of such candidate will be set forth on the ballot for the trustee election.
Plaintiff urges that the amended section vests too much discretion in the Board, again creating the potential for favoritism and improper actions. We reiterate our earlier statements about the fiduciary responsibilities of the members of the Board and note that section 23 of the Nonprofit Corporation Act provides a forum for relief, if necessary, by providing for judicial review of elections to the boards of nonprofit corporations.
There is no indication in the record that the ten percent threshold for getting on the ballot by way of petition is unduly burdensome. Indeed, the amended provision could be considered more favorable to dissident members because the earlier provision entirely failed to provide a mechanism for nomination by petition. We thus affirm that portion of the judgment that upheld the fifth amendment.

IV

A
The Association has cross-appealed from the portions of the trial court's judgment that struck down two amendments. The members voted to supplement Article X of the Declaration by adding the following language:
In the event the Association files a lawsuit, counterclaim or third-party claim... against any owner to enforce any term or provision of ... [the Association's Declaration, bylaws or rules] and [it] prevails in its claims, [it] shall be entitled to collect reasonable costs and attorneys' fees from the Owner.... Should [it] seek to collect its reasonable costs and fees, it will cause the costs and fees to be set forth in the judgment or order ... adjudicating the claim. Collection... may be enforced ... as if the attorneys' fees and costs were an Assessment owed by the particular Owner, except as otherwise determined by a court having jurisdiction over the claim.
An earlier amendment had also sought to afford the Association a right to seek counsel fees but had been struck down by the same trial court in an earlier lawsuit *1196 between the same parties. The trial court concluded the instant amendment was also invalid; the trial court struck down the amendment because it was not authorized by statute and plaintiff had not assented to it.
The statutory prong of the trial court's reasoning is based upon the fact that Panther Valley is not a condominium community and thus does not fall within the fee-shifting provision of the Condominium Act, N.J.S.A. 46:8B-15(e). We do not consider that dispositive, however. As we noted earlier, while the condominium statute is not conclusive, it may provide guidance. State v. Panther Valley Prop. Owners Ass'n, supra, 307 N.J.Super. at 332, 704 A.2d 1010.
One of the core foundations of a common interest community is a sharing of expenses for maintenance among the residents. If the community, however, is compelled to shoulder higher legal expenses because of the intransigence of a small number, we cannot consider it unfair or unreasonable for the Association to seek to lessen the burden upon its other members by seeking to have the uncooperative member contribute to the attorneys' fees required to vindicate the Association's rights.
Nor is it dispositive that plaintiff did not agree with the amendment and thus there was no contract between the parties. The Declaration provided from the outset that it could be amended; the Association could not be deprived of the ability to add provisions to the Declaration that its experience proved warranted. Plaintiff has maintained throughout this litigation that the amendments at issue should be measured under the reasonableness standard; we are unable to consider this amendment unreasonable. We thus reverse that portion of the trial court's judgment that struck down the third amendment.

B
The membership also voted to amend Section 8 of Article XV of the bylaws. Article XV deals generally with enforcement of the community's covenants, bylaws, rules and regulations. Section 8 authorizes the Association to file with the Warren County Clerk a Notice of Violation if the Covenant's Committee has determined "that a continuing violation exists with respect to any Owner...." The trial court concluded this amendment was invalid because a Notice of Violation could be filed without notice to the affected owner.
Defendants argue that the trial court improperly read Section 8 in isolation. They urge that when it is viewed in the overall context of Article XV, there is ample provision for notice to an affected owner.
We do not agree. We conclude that there is a qualitative difference between the private enforcement techniques encompassed within the balance of Article XV and the attempt to create a publicly-recorded lien upon an owner's property. We concur with the trial court that an affected owner is entitled to receive notice before any Notice of Violation is submitted for recording with the County Clerk.
We have noted at several points that the governance of Panther Valley is not subject to the Condominium Act. We are unable, however, to perceive any reason in logic or policy that would obviate the necessity for notice before establishing a lien upon an owner's property. We concur in the analysis expressed in Loigman v. Kings Landing Condominium Ass'n, 324 N.J.Super. 97, 734 A.2d 367 (Ch.1999), that requiring notice can only further the presumed purpose of the association, to be paid. We thus affirm that portion of the trial court's judgment that struck down the second amendment.

V
The remaining issue on appeal is the trial court's denial of plaintiff's request for counsel fees. She argued to the trial court and repeats to us that she was entitled to counsel fees because she prevailed in her challenge to at least a limited degree. *1197 She premised her claim upon the frivolous claims statute, N.J.S.A. 2A:15-59.1. We are satisfied that none of defendants' actions can be considered to have met the statutory threshold requirements. We thus affirm the denial of counsel fees and costs.
In summary, on both plaintiff's appeal and defendant's cross-appeal, we reverse in part and affirm in part.