**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4090-18

RENEE BENNETT, ANDREA
CAPUANO, ARTHUR
CUMMING, MARY ANN
CUMMING, CATHERINE
FORINO, RONNIE
LICHTENSTEIN, HAL
LICHTENSTEIN, EDITH
MICALE, JOSEPH MICALE,
M.D., PETER NOONAN,
SUSANA SANCHEZ, ALICE
STOLER, CANDICE
TIMMERMAN, MARIE
TUTTLE and ALAN TUTTLE,
Individually and as members of
the Northgate Condominium
Association, Inc., and on behalf
of all other unit owners similarly
situated,

      Plaintiffs-Appellants,

and

EDWARD BRERETON, JANET
BRERETON, CLARISSA
VALANTASSIS, MICHAEL
VALANTASSIS, and MARY E.
BRESLIN,

Plaintiffs,

v.

BOB MALONE, HENRY CENICOLA,
BOB DELGRANDE, PAUL GORDON,
DENNIS BRITO, BEN PEDATA, DON
OTTERSTEDT, in their capacity as
former members of the Board of
Directors and Officers of Northgate
Condominium Association, Inc., and
WILKIN MANAGEMENT GROUP,
INC.,

     Defendants-Respondents.
_____

Argued February 3, 2021 – Decided August 10, 2021

Before Judges Sumners, Geiger and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-3443-17.

Michael J. Breslin, Jr. argued the cause for appellants.

Charity A. Heidenthal argued the cause for respondent Wilkin Management Group, Inc., (Zarwin Baum DeVito Kaplan Schaer Toddy PC, attorneys; Charity A. Heidenthal, on the brief).

Joao M. Sapata argued the cause for respondents the Directors (Tango, Dickinson, Lorenzo, McDermott & McGee, LLP, attorneys; Joao M. Sapata, on the brief).

PER CURIAM

A-4090-18

Plaintiffs, who are unit owners in the Northgate Condominium complex, appeal from two orders: a March 5, 2019 order granting summary judgment in favor of defendants Bob Malone, Henry Cenicola, Bob Delgrande, Paul Gordon, Dennis Brito, Ben Pedata, and Don Otterstedt, the former Board of Directors (the Directors) of Northgate Condominium Association, Inc. (the Association); and an April 8, 2019 order granting summary judgment to defendant Wilkin Management Group, Inc. (WMG), the former property manager. On appeal, plaintiffs raise the following arguments with respect to the Directors:

POINT I

THE TRIAL COURT ERRED BY HOLDING BECAUSE THERE WAS NO FRAUD, SELF-DEALING, OR UNCONSCIONABILITY SHOWN BY PLAINTIFFS, THE BUSINESS JUDGMENT RULE WAS APPLICABLE IN THIS MATTER AND INSULATED THE DIRECTOR DEFENDANTS FROM LIABILITY.

POINT II

THE TRIAL COURT COMMITTED ERROR IN RULING THAT PLAINTIFFS' MAY 16, 201[7], COMPLAINT WAS FILED OUTSIDE THE STATUTE OF LIMITATIONS AND HOLDING THAT THE DISCOVERY RULE IS INAPPLICABLE TO THIS CASE.

POINT III

A-4090-18

THE TRIAL COURT ERRED BY HOLDING THAT DEFENDANTS ARE IMMUNE FROM SUIT BY NORTHGATE'S EXCULPATORY CLAUSE IN ITS BY-LAWS.

Plaintiffs raise the following arguments as to WMG:

POINT I

THE TRIAL COURT ERRED IN RULING PLAINTIFFS' COMPLAINT MUST BE DISMISSED WITH PREJUDICE ON THE DOCTRINE OF MOOTNESS.

POINT II

THE TRIAL COURT ERRED IN HOLDING PLAINTIFFS PRESENTED NO PROOFS FOR ANY DAMAGES SUSTAINED BY NORTHGATE IN ITS DERIVATIVE LAWSUIT.

POINT III

THE TRIAL COURT ERRED IN GRANTING DEFENDANT [WMG] SUMMARY JUDGMENT ON THE DOCTRINE OF UNCLEAN HANDS.

POINT IV

THE TRIAL COURT ERRED IN FINDING AS A MATTER OF LAW THAT . . . PLAINTIFFS FAILED TO DEMONSTRATE A BREACH OF DUTY ON THE PART OF [WMG].

We agree that the motion judge may have erred in finding that the statute of limitations barred plaintiffs' complaint.  Notwithstanding, we affirm both

4

orders substantially for the other reasons set forth in the judge's thoughtful and thorough written opinions. We add only the following brief remarks.

In lieu of restating the record, we incorporate by reference the facts described in our unpublished opinion, Breslin v. Northgate Condo. Ass'n, No. A-3464-16 (App. Div. Nov. 30, 2018) (slip op. at 2-6), and state only the facts that are of relevance to the issues now on appeal. Northgate is a condominium complex located in Washington Township that was "established in 1984 by the recording of the Master Deed in the Bergen County Clerk's Office in accordance with the New Jersey Condominium Act, N.J.S.A. 46:8B-1 to -28." Id. at 2. The Association "is the entity responsible for the administration of the condominiums and is governed by its bylaws." Ibid. Each unit owner is a member of the Association, which is managed by the Directors.

The bylaws provided the Directors with the following powers:

> Section 3. GENERAL POWERS: The Board shall have the powers granted to it by law, the Certificate of Incorporation, the Master Deed, and these By-laws, in addition to and not by way of limitation, it shall have the following powers, herein granted or necessarily implied, which it shall exercise in its sole discretion:
> (a) Providing for operation, care, maintenance, repair, alteration, replacement, cleaning, and sanitation of the Common Elements.
>
> . . . .

5

(i) The Board may employ, by contract or otherwise, a manager, managing agent, superintendent, or independent contractor to perform such duties and services as the Board shall authorize, including but not limited to the duties granted to the Board as set forth herein. The Board may delegate to the manager, managing agent, superintendent or independent contractor such powers as may be necessary to carry out the function of the Board. Said manager, managing agent, superintendent, or independent contractor shall be compensated upon such terms as the Board deems necessary and proper.

. . . .

(m) Employ professional counsel and to obtain advice from persons, such as but not limited to landscape architects, recreation experts, architects, planners, biologists, lawyers and accountants.

The bylaws also included an exculpatory clause:

(a) Neither the Board as a body, nor any director thereof, nor any officer of the Association, or any delegees of them, shall be personally liable to any Unit Owner in any respect for any action or lack of action arising out of the execution of his office. Each Unit Owner shall be bound by good faith actions of the Board and officers of the Association, or their [delegees], in the execution of the duties of said directors and officers. Unless acting in bad faith, neither the Board as a body, nor any director or officer of the Association, nor any delegees of them[,] shall be liable to any Unit Owner or other person for misfeasance or malfeasance.

6

(b) Each director and officer of the Association, and their delegees[,] shall be indemnified by the Association against the actual amount of net loss including counsel fees, reasonably incurred by or imposed upon him in connection with any action, suit or proceeding to which he may be made a party by reason of his being or having been a director or officer of the Association . . . except as to matters as to which he shall be finally found in such action to be liable for gross negligence or willful misconduct.

WMG was the Association's former property manager, and its responsibilities were set forth in a management agreement which provided in part:

1.3 Governing Documents. WMG shall use its best efforts to manage the affairs of the Association based on requirements articulated by the Board of Directors and as written in the Association's governing documents. In the event of a conflict between the direction of the Board of Directors and the requirements of the Association's governing documents, the Association's governing documents shall control unless the Board of Directors provides specific written instructions to WMG superseding the terms and conditions of the governing documents.

. . . .

1.7 Significant Actions. Where the Board of Directors determines that an action will require significant Association funds or that an action will be a significant impact to the common property of the Association, including but not limited to seasonal contracts, capital improvements and repairs, WMG

7

shall make recommendations, including alternative approaches, to the Board of Directors. The Board of Directors shall make a determination on its desired approach and WMG will carry out the Board's decision.

. . . .

2.4 Reserve Accounts. WMG shall assist the Board of Directors in depositing, maintaining and accounting for the Association's reserve funds, if any. The Board of Directors may designate a financial institution for the deposit of the Association's reserve funds.

2.5 Disbursements. WMG shall examine invoice and billing statements received by the Association for services and supplies and other costs incurred by the Association and cause such invoices and statements to be paid from the funds of the Association. WMG shall pay, from the funds of the Association, all reasonable charges and obligations incurred by WMG in the course of providing services to the Association under this Agreement. WMG is authorized to pay any amounts owed to WMG by the Association under this Agreement without prior notice.

. . . .

2.7 Annual Budget. Prior to the end of each fiscal year, WMG shall assist the Board of Directors in the preparation of a budget showing anticipated receipts and expenditures for the following fiscal year. The Board of Directors acknowledge and agree that the annual budget is the sole responsibility of the Board of Directors.

8

A-4090-18

. . . .

  3.2 Agreements with Third Parties. The Board of Directors in the name of the Association pursuant to the Association's governing documents shall execute all service and professional agreements for the routine affairs of the Association. The Board of Directors may request WMG's assistance in preparing and negotiating the terms of such service agreements with third party vendors. . . .

  . . . .

  3.7 Support to Association's Counsel. When requested by the Board of Directors and at a mutually agreed-upon fee, WMG shall support the Association's legal counsel in litigation, including appearances at depositions and court proceedings.

On May 16, 2017, plaintiffs filed the present action in the Law Division. Plaintiffs alleged that the Directors were negligent in depleting the Association's reserved funds by incurring fees and costs to litigate a land use application against a neighboring development, the Caliber project. Plaintiffs claimed that WMG negligently and carelessly failed to exercise its duties under the management agreement, which also resulted in the depletion of the Association's reserve accounts. In July 2018, plaintiffs filed a verified amended complaint as a derivative action, R. 4:32-3, and included several additional plaintiffs.

In February 2019, the Directors moved for summary judgment, which plaintiffs opposed. Following oral argument, the motion judge granted the

A-4090-18

Directors' motion. He determined that plaintiffs' complaint was barred by the two-year statute of limitations. The judge also found the Directors were protected under both the business judgment rule and the exculpatory clause in the bylaws. In concluding that the business judgment rule was applicable, he explained:

> In this matter, there is no evidence of fraud or self-dealing. The funds raised through the assessments imposed on the unit owners were used only for litigation costs. At the same time, the unit owners approved the opposition to the Caliber project, and were aware of the assessments and the litigation. Moreover, at the conclusion of the bench trial in the Chancery Matter, Judge Toskos determined that Northgate had the power to challenge the Caliber project, and also had the option to pay for the litigation fees and costs through a common assessment.

> Plaintiffs claim that the [business judgment rule] is inapplicable in the instance, despite admitting the absence of fraud or self-dealing by [d]efendants. Instead, [p]laintiffs argue that the [business judgment rule] is inapplicable because Northgate failed to comply with various provisions of the New Jersey Condominium Act, the Real Property Full Disclosure Act, and the [r]ules and [r]egulations of the Department of Community Affairs. However, these arguments were already made in the Chancery Matter before Judge Toskos, who ultimately found them unconvincing in his findings of fact and conclusions of law.

> Therefore, as there was no fraud, self-dealing, or unconscionability shown by [p]laintiffs, the [business judgment rule] is applicable in this matter and insulates

10

the individual Board members named as [d]efendants from liability.

Thereafter, WMG moved for summary judgment, which plaintiffs opposed. In granting WMG's motion, the motion judge determined that the September 2018 resolution and vote approving the old Board's assessment and to fund the legal settlement rendered plaintiffs' complaint moot. He also concluded that there was no basis to conclude that WMG breached any duty to plaintiffs. The judge found that "the financial affairs in terms of budgeting, management, and the reserve funds were the sole and exclusive responsibility of the Board," and that there was no evidence to controvert the "clear language of the by-laws and the management agreement." He also noted that plaintiffs presented no proofs regarding the damages resulting from WMG's conduct, and that the allegation that the units at Northgate were depreciating was "unsubstantiated." This appeal ensued.

We apply the same standard as the trial court in our review of appeals from summary judgment determinations. Lee v. Brown, 232 N.J. 114, 126 (2018). "Summary judgment is appropriate 'when no genuine issue of material fact is at issue and the moving party is entitled to a judgment as a matter of law.'" Ibid. (quoting Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 366 (2016)). We conduct a de novo review of the court's determination of legal issues, Ross

11

v. Lowitz, 222 N.J. 494, 504 (2015), and "its 'application of legal principles to such factual findings.'" Lee, 232 N.J. at 127 (quoting State v. Nantambu, 221 N.J. 390, 404 (2015)).

Under Rule 4:46-2(c), summary judgment is granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." In applying the standard to our review of a summary judgment determination, we "must view the facts in the light most favorable to the non-moving party." Bauer v. Nesbitt, 198 N.J. 601, 604-05 n.1 (2009); see also Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

Notwithstanding plaintiffs' arguments to the contrary, we agree with the motion judge that the exculpation clause insulates the Directors from liability under these circumstances. Although "[e]xculpatory agreements have long been disfavored in the law because they encourage a lack of care," Hojnowski v. Vans Skate Park, 187 N.J. 323, 333 (2006), it is well-established that "a promise not to sue for future damage caused by simple negligence may be valid." Kuzmiak v. Brookchester, Inc., 33 N.J. Super. 575, 580 (App. Div. 1955). "Courts, however, will not enforce an exculpatory clause if the party benefiting from

exculpation is subject to a positive duty imposed by law or is imbued with a public trust, or if exculpation of the party would adversely affect the public interest." Chem. Bank of N.J. Nat'l Ass'n v. Bailey, 296 N.J. Super. 515, 527 (App. Div. 1997).

Here, the association's bylaws contain an exculpatory clause, authorized by N.J.S.A. 17:12B-38.1, which reads in part that:

> Neither the Board as a body, nor any director thereof, nor any officer of the Association, or any delegees of them, shall be personally liable to any Unit Owner in any respect for any action or lack of action arising out of the execution of his office. . . . Unless acting in bad faith, neither the Board as a body, nor any director or officer of the Association, nor any delegees of them shall be liable to any Unit Owner or other person for misfeasance or malfeasance.

The motion judge determined, and we agree, that

> When considering the relevant sections of Northgate's By-Laws . . . , it is clear that the terms are unambiguous – the individual Board members and the Board as a whole are not to be held liable in negligence actions. Furthermore, [p]laintiffs set forth no cognizable facts in their opposition papers alleging that any of the unit owners agreed to the By-Laws involuntarily, unintelligently, or without full knowledge of the legal consequences of those sections. Accordingly, [d]efendants are immune to a negligence cause of action under the [exculpatory] cause of Northgate's By-Laws.

A-4090-18

Plaintiff's claim against the Directors for breach of a fiduciary duty is tantamount to a cause of action for negligence. See Triarsi v. BSC Grp. Servs., LLC, 422 N.J. Super. 104, 115 (App. Div. 2011). Therefore, and in the absence of any basis to find that the exculpatory clause was unenforceable,[1] we conclude that summary judgment was properly granted to the Directors.

In that same vein, we also agree with the motion judge that the Directors were protected under the business judgment rule. It is well-established that "decisions made by a condominium association board should be reviewed by a court using the . . . business judgment rule." Alloco v. Ocean Beach & Bay Club, 456 N.J. Super. 124, 134 (App. Div. 2018) (quoting Walker v. Briarwood Condo Ass'n, 274 N.J. Super. 422, 426 (App. Div. 1994)). Courts have adopted a "two-prong test" under the business judgment rule: "(1) whether the Associations' actions were authorized by statute or by its own bylaws or master deed, and if so, (2) whether the action is fraudulent, self-dealing or unconscionable." Owners of the Manor Homes of Whittingham v. Whittingham Homeowners

---

[1] We discern nothing in the record to suggest that the exculpation clause at issue is unenforceable. The provision does not adversely affect the public interest, the unit owners are under no affirmative legal duty to act as board members, and the case does not involve a public utility company or common carrier. Chem. Bank of N.J. Nat'l Ass'n, 296 N.J. Super. at 527.

Ass'n, Inc., 367 N.J. Super. 314, 322 (App. Div. 2004) (citing Chin v. Coventry Square Condo., 270 N.J. Super. 323, 328-29 (App. Div. 1994)).

Here, it is undisputed that the association's by-laws authorized the Board to retain engineers and legal counsel, N.J.S.A. 46:8B-14, as well as sue on behalf of the association. N.J.S.A. 46:8B-15; see also Port Liberte II Condo. Ass'n v. New Liberty Residential Urb. Renewal Co., LLC, 435 N.J. Super. 51, 62 (App. Div. 2014) (citing Siller v. Hartz Mountain Assocs., 93 N.J. 370, 377-78 (1983)). Thus, the Directors, with unit owner approval, had the express authority to retain an engineer and legal counsel to challenge the Caliber project.

Furthermore, the record is bereft of evidence showing any basis to conclude that the Directors' conduct was founded on fraud or self-dealing or is otherwise unconscionable.[2] Because plaintiffs failed to overcome this "rebuttable presumption," Maul v. Kirkman, 270 N.J. Super. 596, 614 (App. Div. 1994), the complaint against the Directors was properly dismissed.

We likewise discern no basis to conclude that the motion judge erred in granting summary judgment to WMG. There is no evidence in the record to

---

[2] Plaintiffs contend that, because the Directors allegedly failed to comply with the statutory notice requirements, there was no proper unit owner approval. We conclude that this argument lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

A-4090-18

suggest that WMG breached any duty as set forth in the management agreement. As the motion judge correctly noted, the "financial affairs in terms of budgeting, management, and the reserve funds were the sole and exclusive responsibility of the Board members, not WMG." In any event, we also agree that the new Board's approval of the special assessments to pay for the professionals' fees and costs, as well as replenish the reserve account, renders their claims against WMG moot. See Deutsche Bank Nat'l Tr. Co. v. Mitchell, 422 N.J. Super. 214, 221-22 (App. Div. 2011) ("We consider an issue moot when 'our decision sought in a matter, when rendered, can have no practical effect on the existing controversy.'" (quoting Greenfield v. N.J. Dep't of Corr., 382 N.J. Super. 254, 257-58 (App. Div. 2006))).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16