**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1563-21

LAURA RUCCOLO,

    Plaintiff-Appellant,

v.

ARDSLEY WEST COMMUNITY
ASSOCIATION, INC., BARBARA
CIANCI-MURRAY, LES ZEIFMAN,
MICHAEL GUERRA, and
BEVERLY MILLER,

    Defendants-Respondents.

_____

Submitted January 18, 2024 - Decided March 28, 2024

Before Judges Currier and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-0741-19.

Capehart & Scatchard, PA, attorneys for appellant (Alan Paul Fox, on the briefs).

Cutolo Barros, LLC, attorneys for respondents (Karyn Ann Branco and Jennifer M. Kurtz, on the brief).

PER CURIAM

Plaintiff Laura Ruccolo is the owner of a townhouse in the Ardsley West townhouse community. In this lawsuit against defendant Ardsley West Community Association, Inc. (the HOA), and several individual members of the HOA's elected board of directors (the Board), plaintiff alleged the HOA and its Board members violated the community's Declaration of Restrictive Covenants, Conditions, and Restrictions (the Declaration), its own by-laws, and a variety of laws and regulations related to the operation of a common interest community. All but one count of the complaint was dismissed on summary judgment. The remaining count was dismissed after a bench trial. Plaintiff appeals from the orders granting defendants summary judgment and denying reconsideration, and the order dismissing the remaining count with prejudice after the bench trial. We affirm.

I.

Plaintiff has lived in Ardsley West since 1996. When she purchased the townhouse, plaintiff was provided with the HOA by-laws and the Declaration. Plaintiff sued the HOA for the first time in 2017. The matter was resolved by the parties' entry of a consent order.

A-1563-21

In 2018, plaintiff filed the complaint that is the subject of this appeal. In her second amended complaint, plaintiff alleged that defendants retaliated against her and violated her rights by: taking actions with an improperly constituted Board (count one); misrepresenting that the Planned Real Estate Development Full Disclosure Act (PREDFDA), N.J.S.A. 45:22A-21 to -56, applied to the HOA and improperly seeking to amend the by-laws (count two); violating N.J.S.A. 15A:5-24 by failing to produce requested records (count three); violating the HOA by-laws with respect to capital expenditures (count four); corporate waste (count five); violating the by-laws and founding declarations of the community by adopting a "Homeowner's Manual" without proper notice (count six); creating vague rules and regulations regarding insurance, leases, service animals, and satellite dishes (count seven); breaching its fiduciary duty (count eight); breaching the HOA by-laws (count nine); and violating PREDFDA by failing to provide her notice or an opportunity to engage in alternative dispute resolution before filing a counterclaim (count ten).

The allegations generally arose from plaintiff's challenges to Board actions. She also contested the constitution of the Board and its ratification of its own prior actions.

A-1563-21

In addition, plaintiff challenged the following Board initiatives. In 2019, the Board passed a resolution allowing the HOA to borrow from its "reserves fund" to pay for attorney's fees incurred in defense of plaintiff's lawsuit. The reserves fund is established and regulated under Section 9.5 of the by-laws, which reads:

> The Board shall not be obligated to expend all of the Common Expenses collected in any accounting period, and shall maintain reasonable reserves for, among other things, repairs, replacements, emergencies, contingencies of bad weather or uncollected accounts. Notwithstanding anything herein to the contrary, the Board in its determination of the Common Expenses and the preparation of a budget shall specifically designate and identify that portion of the Common Expenses which is to be assessed against the Unit Owners as a capital contribution and is allocable to reserves for each separate item of capital improvement of and to said property. The amounts assessed and collected for the reserves shall be kept in one or more interest-bearing savings accounts, or certificates of deposit and shall not be utilized for any purpose other than that which was contemplated at the time of the assessment.

In November 2019, the Board proposed an amendment to the Declaration addressing disputes between Ardsley West residents and the HOA. In January 2020, the Board wrote a letter to the community's residents stating that "[a]t the November 14, 2019, Board meeting, the Board adopted a Resolution proposing two amendments to the Declaration . . . ." The letter explained that "[t]he most

4

important of the two is an amendment to Section 15.02 of the Declaration. The amendment establishes a procedure that Unit Owners must follow before filing a lawsuit against the [HOA]." The letter further informed the residents a vote on the amendments would take place during the "annual Unit Owners meeting on February 18, 2020."

The HOA also sent the residents a "Notice of Proposed Amendments to the [HOA Declaration]" explaining the proposed changes to Section 15.02 as follows:

> The Amendment to Article 15.02 modifies the procedure for Alternative Dispute Resolution and provides that a unit owner must follow the procedure before filing a lawsuit against the [HOA]. It requires a unit owner to advise the [HOA] in writing of a dispute. The Notice must state what it is that the Unit Owner objects to and what it is that the Association should be doing. The Unit owner will then meet with the Board, or members of the Board or a representative of the Board to discuss the problem and try to resolve the dispute.

> If the meeting between the Unit Owner and the Board does not resolve the dispute, then the dispute will be submitted to mediation. Mediation is a procedure where an independent third party attempts to assist the parties to a dispute [to] come to a compromise. If the mediation is unsuccessful, the dispute will be referred to non-binding arbitration. Arbitration is a proceeding where the parties present their side of the dispute to an independent third party – the "Arbitrator[.]" After

5

hearing the facts and the arguments of the parties the Arbitrator issues a decision.

Any party can reject the Arbitrator's legal decision and file a lawsuit. However, if the owner unit [sic] rejects the Arbitrator's decision and files suit, he/she must obtain a judicial determination/judgment more favorable than the award by the Arbitrator. If the unit owner does not receive such a better award, then the unit owner will be responsible to the [HOA] for all attorney's fees and costs incurred by the [HOA]. On the other hand if the [HOA] rejects the arbitrator's award, and does not get a better result th[a]n the arbitrator's award, it will be responsible to the unit owner for attorney's fees, if the Court finds that the [HOA] acted in bad faith.

During the HOA's annual meeting on February 18, 2020, the amendment to Section 15.02 passed, with more than seventy-five percent of the residents who were "in good standing" voting in favor of it.

II.

Defendants moved for partial summary judgment on counts one, two, three, and five of the second amended complaint. Thereafter, plaintiff filed a third amended complaint and cross-moved for partial summary judgment on counts one through five.[1] Plaintiff also moved to amend the complaint to add counts eleven, twelve, and thirteen.

---

[1] The third amended complaint incorporated all ten counts of the second amended complaint.

A-1563-21

On March 24, 2020, the court issued an order and written statement of reasons dismissing all of plaintiff's claims against the individual defendants, granting summary judgment to the HOA on counts one and three, denying plaintiff's motion for summary judgment, and granting plaintiff leave to amend the complaint "to add counts eleven, twelve, and thirteen." In its written decision, the court thoroughly considered the parties' arguments and addressed each in turn.

In count one, plaintiff alleged the Board was not properly constituted during certain periods of time and therefore any actions it took were invalid. The court granted defendants summary judgment, finding there was no issue of fact and "the actions taken by the Board were infra vires due to a failure to follow formal procedural formalities, and those actions can be ratified after the fact." (italicization removed). The court concluded "the validly elected Board ratified all the previous actions of the Board." In addition, the court found the Board was authorized to increase maintenance fees under the HOA by-laws. Furthermore, the determination of monthly maintenance fees was "insulated from judicial review" under the business judgment rule.

Under count three, plaintiff alleged the Board failed to comply with her request to produce all its books and records. The court dismissed the count as

A-1563-21

moot since plaintiff was provided all of the documents during discovery and a prior order held she was not entitled to review the unredacted proxy ballots.

On April 24, 2020, the court issued an amended order and written statement of reasons, granting defendants summary judgment on counts two and five.

III.

Thereafter, plaintiff filed her fourth amended complaint. The ten counts set forth in the amended second and third complaints remained the same. The new counts in plaintiff's fourth amended complaint alleged that defendants retaliated against plaintiff and violated her rights by: violating N.J.S.A. 15A:5-24 and Section 9.9 of the by-laws in restricting plaintiff's ability to inspect or review defendants' documents (count eleven, part one);[2] improperly amending the Declaration's Section 15.02 with flawed voting procedures (count eleven, part two); and depriving plaintiff of her rights under N.J.S.A. 2A:16-52 in creating an arbitration policy (count twelve). Plaintiff sought declaratory relief establishing that the amendment to the Declaration was not a "'fair and efficient' means to resolve disputes" under PREDFDA (count thirteen).

---

[2] The fourth amended complaint named two counts as "count eleven," which we refer to as count eleven, part one and count eleven, part two.

A.

In late 2020, the parties filed cross-motions for partial summary judgment regarding the fourth amended complaint. Plaintiff also moved for reconsideration of the March and April 2020 orders.

On April 15, 2021, the court denied the reconsideration motion, finding plaintiff did not present any "new or overriding circumstances" to reconsider the rulings. The court granted defendants summary judgment on counts one, four, six, seven, eleven, part one, twelve and thirteen of the fourth amended complaint. As to count one, the court found "[d]efendants' decision to file a [c]ounterclaim [was] protected by the [b]usiness [j]udgment [r]ule."[3]

The court denied plaintiff's motion for reconsideration on count three. Therefore, the court did not address it again specifically in the summary judgment written statement of reasons.

In addressing count four, the court noted that Section 9.5 of the by-laws permitted the Board "to keep money in a checking account for the necessary

---

[3] Plaintiff did not address count two in her summary judgment papers. She did not appeal the dismissal of that count.

A-1563-21

discharge of its functions, which is a part of the reasonable reserves that may be used 'among other things.'" The court stated it had already determined there was no error in dismissing count five in its decision denying the reconsideration motion. Therefore, it did not address it again.

In considering count six, the court found "the broad language of the Declaration and the [b]y[l]aws" permitted the Board to adopt a homeowner's manual that "regulat[ed] the exterior maintenance and usage of a [u]nit." In count seven, plaintiff challenged defendants' rules and regulations, particularly regarding the maintenance of the exterior of a unit and the number of permitted pets. The court considered the factors articulated in Davidson Bros. v. D. Katz & Sons, Inc., 121 N.J. 196, 211-12 (1990), regarding the reasonableness and enforceability of restrictive covenants. The court concluded that the covenants in the Declaration to which plaintiff objected were not "unclear, arbitrary, capricious, illegal, unauthorized or otherwise unreasonable as a matter of law."[4]

As to count eleven, part one, the court found N.J.S.A. 15A:5-24(a) authorized defendants to adopt a policy regarding plaintiff's right to inspect the

---

[4] Plaintiff does not present any arguments in her brief regarding the grant of summary judgment to defendant on counts eight, nine, and ten. Therefore, any appeal of those issues has been waived. See Green Knight Cap., LLC v. Calderon, 469 N.J. Super. 390, 396 (App. Div. 2021).

HOA's books and records within a specific timeframe. The court dismissed that count.

The court denied both parties summary judgment on count eleven, part two, finding there was an issue of fact regarding the voting procedure on the amendment during the February 2020 annual meeting.

Under count twelve, plaintiff sought a declaration that the amendment to the Declaration requiring the arbitration of claims prior to the filing of a lawsuit was unenforceable. The court found the amendment was substantively reasonable. The court stated:

> The circumstances here do not suggest that the arbitration process is unreasonable. There is no question that arbitration is a favored means of resolving disputes in New Jersey; thus, the amendment requiring arbitration accomplishes a worthwhile purpose. It is limited in duration, given that trial can be sought following arbitration. It protects the parties with an interest in the land from time and expenses of lengthy litigation. Moreover, there is no evidence that the arbitration requirement is imposed out of spite or malice.

The court concluded, "Because the amendment is substantively valid, the fact that the arbitration amendment was not part of the original Declaration at the time of [p]laintiff's purchase is of no consequence." Summary judgment was granted to defendants on count twelve.

11

As to count thirteen, the court found plaintiff had not substantiated her allegations that defendants had "violated their duty to provide a fair and efficient means to resolve disputes under PREDFDA." Summary judgment was granted on this count.

B.

In December 2021, the court conducted a bench trial on the sole remaining issue—count eleven, part two—whether the Board improperly amended Declaration Section 15.02 through the use of proxy voting forms during the February 18, 2020 annual meeting. Plaintiff relied on Section 5.8 of the by-laws which stated that proxy ballots should be received twenty-four hours prior to the meeting. Because twelve proxy ballots were dated February 18, 2020, plaintiff contends they should not have been counted and the amendment would not have passed.

The court heard testimony from several witnesses. Plaintiff testified she received notice of the election, and that the notice included a proxy voting form but not an in-person ballot. Plaintiff said she attended the annual meeting and asked about the ballots. She was told to fill out the proxy ballot if she wanted to vote on the amendment. However, she decided not to submit a proxy ballot. She recalled seeing several people hand in proxy ballots.

12

Plaintiff stated she could not remember whether she read the portion of the notice that delineated the purpose of the arbitration amendment. She also said she did not inform any residents or the HOA that she thought the proxy was "false, misleading and inaccurate." In fact, plaintiff testified she did not speak to any residents during the meeting, because she thought it would be inappropriate because of the pending litigation. Plaintiff admitted she had spoken to residents at an earlier meeting in November 2019 when she addressed the HOA's contention that her litigation had increased the cost of the HOA's insurance policy premium.

Melissa Greene is the HOA's property manager. She testified she had worked with Ardsley West since 2016, and her duties included correspondence, inspections, processing violations, and billing collections. In short, she was responsible for the day-to-day management of the community. Greene testified that she attends the community meetings and recalled being at the November 2019 meeting. She advised that one of the agenda items for that meeting was the notice of non-renewal of an insurance policy issued by the HOA's insurance company.

Greene also testified regarding the two notices—one issued to residents on December 17, 2019, describing the issues discussed at the November meeting

13

and the second sent to residents in January 2020 to inform them of the "annual election meeting." In addition to the second notice, Greene also sent the residents several documents prepared by the HOA's attorney, Gary Zangerle, which described the proposed amendments to the Declaration. Greene testified she sent the additional set of notices and supporting attachments on February 11, 2020. She did not receive any questions from any residents about the notices or documents.

Greene was present at the February 18, 2020 annual meeting and for the amendment vote. She testified that she received proxy voting forms on the day of the election but could not remember how many. She and another community member counted the ballots, the amendment was passed, and she announced the results to the community. Greene conceded the February 18, 2020 meeting was "[n]ot noticed . . . as a special meeting."

Zangerle testified that he has served as counsel for Ardsley West since 2018, and he was hired in part to ensure the HOA complied with the consent order that resolved plaintiff's first litigation against the HOA. He stated he attended the November 2019 HOA meeting, and in December 2019 and January 2020 he submitted three resolutions to Greene to reproduce for residents, including one describing an amendment to the Declaration which would require

mediation and non-binding arbitration of disputes before a resident could file a lawsuit against the HOA.

Zangerle explained the Declaration already had provisions for mediation, but the proposed amendment added the requirement of non-binding arbitration and fee-shifting provisions that applied to both residents and the HOA, should either choose to pursue litigation. Zangerle further testified that, by limiting litigation, the HOA might be able to reduce its rising insurance costs.

Zangerle described the proxy ballot as "akin to an absentee ballot." He testified the HOA did not strictly follow the by-law requiring proxies to be submitted more than twenty-four hours before a meeting because the HOA wanted "to encourage as many votes as" possible and, therefore, it accepted proxies at the meeting. Zangerle noted the proxy did not contain the twenty-four-hour language. Because Ardsley West was a small community, Zangerle said he was "not going to restrict [the residents'] vote in any way." Zangerle confirmed he had a brief discussion with plaintiff on the day of the election, during which he told her she could cross out the word "proxy" on the voting form and it would be handled as a same-day ballot.

On December 17, 2021, the court issued an oral decision finding plaintiff did not meet her burden to establish the election regarding the Declaration

amendment was improper. Therefore, the court dismissed count eleven, part two of the fourth amended complaint with prejudice.

The court found that plaintiff attended the November 2019 meeting during which the HOA raised the subject of amending the Declaration's arbitration procedures. It also found there were subsequent communications from Greene on behalf of the Board in December 2019, and the January and February 2020 notices expressly announced that alternative dispute resolution would be discussed at the February 18, 2020 annual meeting. Greene also provided a copy of the voting form. The court concluded that plaintiff had notice of the annual meeting.

The court found that on the day of the meeting and election, there were no traditional ballots available for the amendment election, only proxy forms, and a review of the redacted forms reflected twelve of the proxy forms were filled out on the day of the election in violation of the HOA's by-laws, which restrict proxy designations within twenty-four hours of an election. However, plaintiff was informed at the meeting that a proxy filled out by a resident of the HOA during the meeting would be treated as a ballot. Although plaintiff declined to fill out the proxy form, the court found that plaintiff "in fact understood her rights and options," that some residents successfully voted in person at that

16

meeting, and that plaintiff did not demonstrate any of the other residents were confused about the content or consequences of the vote. The court concluded the proxy forms, overall communications, and "totality of the circumstances" demonstrated that the topic of the amendment election was clear, and that the portion of the form where the residents voted was sufficient to put them on notice that they were voting on an amendment to the arbitration provision.

The court also found "[p]laintiff, a sophisticated attorney," lacked credibility in stating "she was unable to understand the nature of the proxy or . . . the purpose of the February 18 meeting." The court described plaintiff's testimony as "evasive, defensive and accusatory." Conversely, the court found Greene and Zangerle were persuasive, stating "their testimony had the ring of truth." The court found it significant that, when asked about the February 18, 2020, amendment election and the associated annual meeting, Greene acknowledged that proxies were collected but admitted a lack of recollection about the exact numbers. The court also noted Zangerle's admission of drafting mistakes, describing his explanation as "candid."

The court characterized plaintiff's arguments as "form over substance" and held that there was "[n]o evidence of any confusion . . . other than plaintiff's self[-]serving testimony." The court found the HOA made "good faith efforts to

17

provide notice in compliance with the by[-]laws." In addition, the court agreed with the previous ruling regarding the validity of the proxy forms submitted on the day of the annual meeting, stating "that nothing in the by[-]laws would prevent votes in person by individuals at the meeting." The court conceded that the HOA election was not "the height of best practice," but there were no objections to the procedures, and therefore, the court found the "imperfections" did not invalidate the results of the election.

The court memorialized its decision in a February 8, 2022 order, dismissing count eleven, part two of the fourth amended complaint with prejudice.

## IV.

On appeal, plaintiff challenges the dismissal of the individual defendants and the dismissal of counts one, three, four, six, seven, eleven (both parts), twelve and thirteen of the fourth amended complaint. As stated, these counts were all dismissed on summary judgment or after trial. In addition, the court denied reconsideration of its summary judgment rulings.

Our review of a ruling on summary judgment is "de novo, applying the same legal standard as the trial court." Samolyk v. Berthe, 251 N.J. 73, 78 (2022). Thus, we "consider whether the competent evidential materials

presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).

"If there is no genuine issue of material fact, we must then 'decide whether the trial court correctly interpreted the law.'" DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)). We review issues of law de novo and accord no deference to the trial judge's conclusions on issues of law. Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

A motion for reconsideration is "an opportunity to seek to convince the court that either 1) it has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the court either did not consider, or failed to appreciate the significance of probative, competent evidence." Kornbleuth v. Westover, 241 N.J. 289, 301 (2020) (quoting Guido v. Duane Morris LLP, 202 N.J. 79, 87-88 (2010) (internal quotation marks omitted)). The moving party must "state with specificity the basis on which [the motion] is made" and supply "a statement of the matters or controlling decisions that counsel believes the court has overlooked or as to which it has erred." R. 4:49:2.

19

We will not overturn a trial court's ruling on a motion for reconsideration absent "a clear abuse of discretion." Kornbleuth, 241 N.J. at 301 (quoting Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994)).

Rule 4:49-2 governs reconsideration of final orders. However, the "denial of summary judgment is always interlocutory." Hart v. City of Jersey City, 308 N.J. Super. 487, 498 (App. Div. 1998). Rule 4:42-2(b) permits reconsideration of summary judgment decisions "at any time before the entry of final judgment in the sound discretion of the court in the interest of justice." Both Rules give the trial court similar discretion in the consideration of the issues here.

We begin with plaintiff's contentions regarding the court's grant of summary judgment to the individual defendants who served as members of the Board. Plaintiff asserts the trial court erred in applying the business judgment rule because the individual Board members were acting "outside the scope of their powers" and "the business judgment rule only applies if . . . [d]efendants['] actions are authorized by law and the governing documents." Plaintiff further alleges the Board members breached their fiduciary duty to her.

"'"The business judgment rule bars judicial inquiry into the decisions of the board of directors made in good faith"' and within '"the limits of the by-laws."'" Alloco v. Ocean Beach & Bay Club, 456 N.J. Super. 124, 140 (App.

20

Div. 2018) (quoting Reilly v. Riviera Towers Corp., 310 N.J. Super. 265, 270 n.4 (App. Div. 1998) (citation omitted)). Thus, overturning a homeowners association's board of directors' decision requires a plaintiff to show that such board acted in "bad faith," not just "[b]ad judgment." Ibid. (quoting Maul v. Kirkman, 270 N.J. Super. 596, 614 (App. Div. 1994)). As we stated in Alloco, the members of a homeowners association board "are an elected group of residents tasked with maintaining, through enforcement and adaptation, a community scheme established by the founders." Id. at 141. Board members are not required to form an expertise in the discharge of their duties and will be protected from individual liability "if they make their decision '"in good faith based on reasonable business knowledge."'" Ibid. (quoting Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 175 (2011) (quoting Green Party of N.J. v. Hartz Mountain Indus., Inc., 164 N.J. 127, 147 (2000))).

When the court dismissed the individual defendants in March 2020, it relied on Maul. The court found there was no "evidence of fraud, self-dealing, or unconscionable conduct," and therefore the individual Board members were protected "from being questioned or second-guessed on [their] conduct" under the business judgment rule. Maul, 270 N.J. Super. at 614.

In ruling on the reconsideration motion, the court found plaintiff had not presented any new evidence or information to warrant reversal of the prior ruling. We agree.

Plaintiff's allegations do not factually demonstrate the individual Board members were acting in bad faith or that the decisions made by the Board were outside the law. In reading the allegations in the light most favorable to plaintiff, she asserts the HOA targeted her in enforcing aesthetic standards and sought to implement a new arbitration provision in response to her lawsuits against the HOA. That conduct is not unconscionable. It is activity within the scope of the Board's province and protected under the business judgment rule. Plaintiff has not countered the "rebuttable presumption" that the actions of a Board are valid. Ibid. The court did not err in granting summary judgment to the individual defendants.

In count three of the fourth amended complaint, plaintiff alleged defendants did not allow her to review documents, including the unredacted proxy ballots from the HOA amendment election. In dismissing the count, the court determined plaintiff was not entitled to the unredacted ballots.

N.J.A.C. 5:26-8.9(h) governs the review of ballots in common interest community elections. It states:

The association shall verify the eligibility of the voters and count the ballots in a non-fraudulent and verifiable way.

1. Any depository for physical ballots shall be secured.

2. All ballot tallying shall occur publicly, and the ballots shall be open to inspection by any member of the association for a period of [ninety] days from the date of the election.

. . . .

3. All ballots shall be cast in an anonymous manner.

4. If the by[-]laws permit, and the association member consents, a ballot may be cast electronically if it is administered by a neutral third party and anonymity is maintained.

In her appellate appendix, plaintiff included fifty completed proxy ballots submitted in the amendment election. The forms are titled "ARDSLEY WEST COMMUNITY ASSOCIATION, INC PROXY" and have spaces for marking the unit owner's vote. At the bottom of the form, there are blank spaces for the completion of "Unit," "Dated," and "Unit Owner Signature." Defendants redacted the entries listed for "Unit" and "Unit Owner Signature" prior to producing the proxy forms in discovery. If the forms were not redacted, the vote of the unit owner would be disclosed.

23

Plaintiff contends she was entitled to review unredacted ballots under N.J.A.C. 5:26-8.9(h). She asserts the trial court erred in relying on N.J.A.C. 5:26-8.9(h)(3) and a reading in pari materia of the entire regulation in determining the residents' votes should remain anonymous.

The interpretation of a regulation is governed by the "classic standards" of statutory interpretation. Bedford v. Riello, 195 N.J. 210, 221 (2008). "Generally, under those standards, the intent of the drafters is to be found in the plain language of the enactment." Id. at 221-22 (citing DiProspero v. Penn, 183 N.J. 477, 492 (2005)). "Statutes in pari materia are to be construed together when helpful in resolving doubts or uncertainties and the ascertainment of legislative intent." State v. Green, 62 N.J. 547, 554-55 (1973). "Moreover, 'regulations within the same regulatory scheme should, where feasible, be read as consistent with each other.'" Czar, Inc. v. Heath, 398 N.J. Super. 133, 139 (App. Div. 2008), aff'd as modified, 198 N.J. 195 (2009).

We see no reason to disturb the trial court's interpretation of N.J.A.C. 5:26-8.9(h) that preserving the anonymity of voting residents is the most important of the competing values concerning elections in common interest communities. N.J.A.C. 5:26-8.9(h)(1) permits the use of a drop off box (a "depository for physical ballots") to collect votes in advance of an election date

24

but requires the physical security of the collections. N.J.A.C. 5:26-8.9(h)(3) states that "[a]ll ballots shall be cast in an anonymous manner." N.J.A.C. 5:26-8.9(h)(4) allows for electronic voting, but only in circumstances where "anonymity is maintained." Three of the four provisions of N.J.A.C. 5:26-8.9(h) expressly or intrinsically address and require the anonymity of voters in these elections.

Nevertheless, plaintiff asserts that under N.J.A.C. 5:26-8.9(h)(2), she is entitled to review the unredacted forms executed by proxies and cast as ballots in the election. We disagree. A reading of the regulatory scheme as a whole indicates that all materials prepared for a common interest community election—and the results of that election—should be available for review by residents of that community. Here, a copy of the ballot, in the form of a sample proxy voting form, was available to plaintiff a month prior to the annual meeting.

However, no reading of the regulation leads to the conclusion that a resident is entitled to review the ultimate votes of their fellow common interest community residents. To draw such a conclusion would eviscerate the remaining provisions of the regulation.

The court interpreted N.J.A.C. 5:26-8.9(h) correctly. The HOA provided plaintiff with the sample proxy voting form in advance of the election and produced the minimally redacted ballots from the election during discovery. This comports with N.J.A.C. 5:26-8.9(h)(2). Plaintiff was permitted to inspect the actual proxy ballots, only nominally redacted to protect the voter's anonymity. The trial court did not err in granting defendants summary judgment on count three.

Under count four, plaintiff alleged the individual Board members breached their fiduciary duty in using the community's capital reserves to pay the HOA's attorney's fees incurred in litigation. Plaintiff contends the reserve fund under Section 9.5 of the by-laws was solely for capital improvements. The court granted the individual defendants summary judgment on this count, noting there was no "express language" in the by-laws prohibiting the use of capital reserves to fund litigation.

In addition, the court noted

> the [b]y-[l]aws address common expenses and also set forth language specifically addressing capital assessments and improvements. There is no question that funding litigation is a non-capital expense, thereby falling under the common expense language of the provision. As set forth in this common expense language, non-capital improvements do not have the same restrictions as the pre-designated capital reserves.

26

> The [b]y-[l]aws specifically allow the Board to keep money in a checking account for the necessary discharge of its functions, which is a part of the reasonable reserves that may be used "among other things."

For the reasons stated by the trial court as well as our prior determination that the business judgment rule protected the individual Board members from liability, we are satisfied there was no error in granting defendants summary judgment on count four.

We turn to count six in which plaintiff sought declaratory judgment stating that the HOA's promulgation of a handbook with rules and regulations was invalid. Plaintiff asserts "[t]he Declaration does not give . . . [d]efendants the authority to determine the 'responsibilities of the residents.'" In addition, she contends certain handbook provisions are ultra vires, specifically those related to the installation of antennas and satellite dishes and the leasing of units.

The court noted that under "the [b]y-[l]aws, the [HOA] is permitted to 'establish rules and regulations governing the Property and the Use of the Community Facilities' and the Board . . . is permitted to 'do anything and everything necessary for the sound management of Ardsley West.'" Under § 5.01 of the Declaration, all unit owners and residents were subject to the Declaration, the by-laws and any rules and regulations promulgated by the

27

Board.  In addition, "[o]wnership . . . or occupancy of any Units in the property shall be conclusively deemed to mean that said [o]wner, . . . or occupant has accepted and ratified th[e] Declaration, the [b]y-[l]aws, and the rules and regulations of the [HOA] and will comply with them."

The trial court concluded "it is apparent that adopting a Homeowner's Manual regulating the exterior maintenance and usage of a Unit is well within the Board['s] . . . and [HOA's] rights."  We agree.  The Declaration expressly granted the HOA and the Board authority to make regulations regarding the exterior presentation of homes in the community.  Summary judgment was properly granted on count six.

Under count seven, plaintiff sought declaratory relief that the Declaration and the HOA rules and regulations were ambiguous.  In addition, she contended the HOA rules and regulations were unenforceable restrictive covenants.  As examples, plaintiff cited the regulations requiring the unit be kept "in a safe, clean and sanitary manner and condition," prohibiting the installation of satellite dishes, and restricting the types and number of allowable pets.

The trial court considered the restrictive covenants under the eight factors enumerated in <u>Davidson Bros.</u>, 121 N.J. at 211-12, and applied in <u>Committee</u>

for a Better Twin Rivers v. Twin Rivers Homeowners' Ass'n., 192 N.J. 344, 370-71 (2007), and found the language was not vague or arbitrary. We agree.

First, plaintiff has not demonstrated the regulations caused her any damage. Therefore, her complaints remain speculative. In addition, the covenants were clearly expressed, recorded, reasonable as applicable only to the residents' homes, there was no restraint on trade, and there were no changed circumstances that made them unreasonable. See Twin Rivers, 192 N.J. at 370-71. The court properly granted summary judgment on count seven.

We consider next the court's summary judgment ruling on count eleven, part one. In that count, plaintiff alleged defendants lacked the authority to adopt a policy regarding the inspection of HOA records that conflicted with Section 9.9 of the by-laws and N.J.S.A. 15A:5-24. This policy was adopted by resolution during the November 2019 meeting. After plaintiff objected to the new policy, the Board amended the provisions of the policy that were "objectionable" to plaintiff. That amended policy resolution became effective February 18, 2020.

A reading of the February 2020 policy reflects it does not conflict with the HOA by-laws or the statutory law regarding the ability of a person to review the corporate documents. Count eleven, part one was properly dismissed.

Count eleven, part two was the subject of the bench trial. As stated above, the trial court concluded the amendment election in February 2020 was properly conducted. Our review of the court's well-reasoned oral decision presents no reason for this court to disturb the judgment.

We turn to a consideration of the grant of summary judgment on counts twelve and thirteen, in which plaintiff alleges the modified arbitration provision was an unconscionable contract of adhesion and noncompliant with PREDFDA. The trial court found the reasonableness rule applied and the amendment was reasonable and valid.

"[A]mendments passed by the membership rather than the Board" are evaluated under the "reasonableness rule, because the 'analytical framework which provides the justification for the business judgment rule is absent.'" Cape May Harbor Vill. & Yacht Club Ass'n v. Sbraga, 421 N.J. Super. 56, 65 n.5 (App. Div. 2011) (quoting Mulligan v. Panther Valley Prop. Owners Ass'n, 337 N.J. Super. 293, 303 (App. Div. 2001) (citation omitted)). To determine reasonableness, a court weighs factors such as: the extent of any restraints on alienation; whether restrictions are borne equally among the residents; the nature of restrictions on the use of a resident's home or common areas; the fairness of dispute procedures and Board elections; and issues of notice inherent to every

community controlled by a restrictive covenant or other similar instrument. See Mulligan, 337 N.J. Super. at 310-11 (finding an amendment that allowed the homeowners association to collect attorney's fees from an unsuccessful litigant or unit-owner in a dispute with the association was reasonable because the community was "compelled to shoulder higher legal expenses [due to] the intransigence of a small number").

The amendment of the arbitration provision was approved by the residents. As to the PREDFDA argument, the statutory language belies plaintiff's unsupported assertion.

Under PREDFDA, one of the powers and duties of a homeowners association is to "provide a fair and efficient procedure for the resolution of disputes between individual unit owners and the association, and between unit owners, which shall be readily available as an alternative to litigation." N.J.S.A. 45:22A-44(c). "It is well-settled that New Jersey's strong public policy favors settlement of disputes through arbitration." Minkowitz v. Israeli, 433 N.J. Super. 111, 131 (App. Div. 2013) (citing Hojnowski v. Vans Skate Park, 187 N.J. 323, 343 (2006)).

The trial court correctly determined that the arbitration provision was reasonable. The Board's goal in requiring arbitration and permitting fee shifting

was to avoid the expense of litigation pursued in the Superior Court. The amended provision applied equally to all residents of the community including the Board members and represented a rational response to increasing insurance costs. The grant of summary judgment on counts twelve and thirteen was supported by the evidence in the record and applicable principles of law.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1563-21